# EXHIBIT A

# Kings County Supreme Court Docket

NYSCEF
Kings County Supreme Court

**Document List**
**Index #   502413/2018**

Created on:03/07/2018 07:45 PM

---

Case Caption:   **AMSTERDAM TOBACCO CO., INC. et al - v. - HAROLD LEVINSON ASSOCIATES, LLC et al**

Judge Name:

| Doc# | Document Type/Information | Status | Date Received | Filed By |
|------|--------------------------|--------|---------------|----------|
| 1 | SUMMONS | Processed | 02/06/2018 | Fox, R. |
| 2 | COMPLAINT | Processed | 02/06/2018 | Fox, R. |
| 3 | AFFIRMATION/AFFIDAVIT OF SERVICE<br>Affidavits of Service of Summons & Complaint | Processed | 02/09/2018 | Fox, R. |
| 4 | STIPULATION - TIME TO ANSWER<br>Stipulation to Extend Time to Move, Answer, or Otherwise Respond to Complaint | Processed | 02/26/2018 | Fox, R. |

# Document 1

Summons, dated February 6, 2018

Randall M. Fox
KIRBY McINERNEY LLP
825 Third Avenue, 16th Floor
New York, NY 10022
Phone: (212) 371-6600
Fax: (212) 751-2540

*Counsel for Plaintiffs*

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF KINGS**

| | |
|---|---|
| AMSTERDAM TOBACCO CO., INC., DONOHUE CANDY AND TOBACCO CO., INC., KINGSTON CANDY & TOBACCO CO., INC., MOUNTAIN CANDY & CIGAR CO., INC., and SUNRISE CANDY & TOBACCO CORP., <br><br> Plaintiffs, <br><br> v. <br><br> HAROLD LEVINSON ASSOCIATES, LLC, CORE-MARK MIDCONTINENT, INC., MCLANE/EASTERN, INC., MCLANE/MIDWEST, INC., PLAINFIELD TOBACCO AND CANDY CO., INC. D/B/A RESNICK DISTRIBUTORS, and CONSUMER PRODUCT DISTRIBUTORS, INC. D/B/A J. POLEP DISTRIBUTION SERVICES, <br><br> Defendants. | **Index No. _____** <br><br><br> **SUMMONS** <br><br><br> **Date Index No. Purchased:** |

TO THE PERSONS NAMED AS DEFENDANTS ABOVE:

PLEASE TAKE NOTICE THAT YOU ARE SUMMONED to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiffs' attorney within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Page **1** of **3**

Case 1:18-cv-01432-KAM-VMS   Document 1-1   Filed 03/08/18   Page 6 of 50 PageID #: 16

Plaintiffs designate New York County as the place of trial. The basis of venue is CPLR 503(a), in that one of the plaintiffs resides in this county. Plaintiff Sunrise Candy & Tobacco Corp. has its principal place of business at 150 Crescent Street, Brooklyn, New York

Dated: New York, New York
February 6, 2018

KIRBY McINERNEY LLP

By: _____
    Randall M. Fox
825 Third Avenue, 16th Floor
New York, New York 10022
212-371-6600

Attorneys for Plaintiffs Amsterdam Tobacco Co, Inc., Donohue Candy and Tobacco Co., Inc., Kingston Candy & Tobacco Co., Inc., Mountain Candy & Cigar Co., Inc., and Sunrise Candy & Tobacco Corp.

**DEFENDANTS**:
Harold Levinson Associates, LLC
21 Banfi Plaza
Farmingdale, New York 11735

Core-Mark Midcontinent, Inc.
c/o National Registered Agents, Inc.
111 Eighth Avenue
New York, New York 10011

McLane/Eastern, Inc.
c/o CT Corporations System
111 Eighth Avenue
New York, New York 10011

McLane/Midwest, Inc.
c/o CT Corporations System
111 Eighth Avenue
New York, New York 10011

Plainfield Tobacco and Candy Co., Inc. d/b/a Resnick Distributors
25 Van Dyke Avenue
New Brunswick, New Jersey 08901

Exhibit A p. 5

FILED: KINGS COUNTY CLERK 02/06/2018 01:59 PM INDEX NO. 502413/2018

NYSCEF DOC. NO. 1 Case 1:18-cv-01432-KAM-VMS Document 1-1 Filed 03/08/18 Page 7 of 50 PageID #: 17 RECEIVED NYSCEF: 02/06/2018

Consumer Product Distributors, Inc. d/b/a Polep Distributors
705 Meadow Street
Chicopee, Massachusetts 01013

Exhibit A p. 6

# Document 2

Complaint, dated February 6, 2018

FILED: KINGS COUNTY CLERK 02/06/2018 01:59 PM INDEX NO. 502413/2018

NYSCEF DOC. NO. 1    Case 1:18-cv-01432-KAM-VMS   Document 1-1   Filed 03/08/18   Page 9 of 50 PageID #: 19    RECEIVED NYSCEF: 02/06/2018

Randall M. Fox
KIRBY McINERNEY LLP
825 Third Avenue, 16th Floor
New York, NY 10022
Phone: (212) 371-6600
Fax: (212) 751-2540

*Counsel for Plaintiffs*

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF KINGS**

|  |  |
|---|---|
| AMSTERDAM TOBACCO CO., INC., DONOHUE CANDY AND TOBACCO CO., INC., KINGSTON CANDY & TOBACCO CO., INC., MOUNTAIN CANDY & CIGAR CO., INC., and SUNRISE CANDY & TOBACCO CORP., <br><br> Plaintiffs, <br><br> v. <br><br> HAROLD LEVINSON ASSOCIATES, LLC, CORE-MARK MIDCONTINENT, INC., MCLANE/EASTERN, INC., MCLANE/MIDWEST, INC., PLAINFIELD TOBACCO AND CANDY CO., INC. D/B/A RESNICK DISTRIBUTORS, and CONSUMER PRODUCT DISTRIBUTORS, INC. D/B/A J. POLEP DISTRIBUTION SERVICES, <br><br> Defendants. | Index No. _____ <br><br><br> **COMPLAINT** <br><br><br> **Jury Trial Demanded** |

## INTRODUCTION

1.      Plaintiffs Amsterdam Tobacco Co., Inc., Donohue Candy and Tobacco Co., Inc.,

Kingston Candy & Tobacco Co., Inc., Mountain Candy & Cigar Co., Inc., and Sunrise Candy &

Tobacco Corp. (collectively, "Plaintiffs"), by their attorneys, file this Complaint against

Defendants Harold Levinson Associates, LLC ("HLA"), Core-Mark Midcontinent, Inc. ("Core-

Case 1:18-cv-01432-KAM-VMS Document 1-1 Filed 03/08/18 Page 10 of 50 PageID #: 20

Mark"), McLane/Eastern, Inc., McLane/Midwest, Inc. (McLane/Eastern and McLane/Midwest, together referred to as "McLane"), Plainfield Tobacco and Candy Co., Inc. d/b/a Resnick Distributors ("Resnick"), and Consumer Product Distributors, Inc. d/b/a J. Polep Distribution Services ("Polep") (collectively, "Defendants") for injunctive relief and to recover damages and costs under the New York Cigarette Marketing Standards Act, N.Y. Tax Law Art. 20-A (the "CMSA").

       2.      This case concerns Defendants' systematic violations of the CMSA by giving secret rebates and other price concessions with the intent and effect of harming Plaintiffs and harming competition more generally. Because Plaintiffs followed the CMSA's rules on minimum cigarette prices, they could not compete with Defendants' illegal prices that were below the CMSA's minimums, and thus were severely damaged in their businesses.

       3.      The CMSA was enacted in 1985 with the express legislative intent of stabilizing the cigarette industry in New York State and to enable cigarette agents and dealers to compete fairly for cigarette sales. It sets minimum prices at which cigarette distributors can sell cigarettes in the state. A distributor violates the CMSA when it sells cigarettes for less than those minimums with the intent to harm competitors or destroy or substantially lessen competition. The CMSA is often referred to as New York's minimum price law or its fair trade law.

       4.      Defendants HLA, Core-Mark, McLane, Resnick and Polep are the largest cigarette wholesalers operating in New York State. From before 2012 and continuing through to the present day, they have all repeatedly violated the CMSA by giving secret rebates to customers that drove their prices below the minimum legal prices, and they gave these secret rebates with the intent of injuring Plaintiffs by taking business from them with the illegal prices.

Exhibit A p. 9

Case 1:18-cv-01432-KAM-VMS Document 1-1 Filed 03/08/18 Page 11 of 50 PageID #: 21

Defendants carefully disguised their rebates, often by falsely calling them credits for such things as nonexistent returned or damaged goods.

5.      The Plaintiffs in this case are all smaller licensed cigarette distributors based in New York.  Many are family operated businesses that have been in operation for decades, often with their ownership having passed down from one generation to the next.  Unlike Defendants, they do not give illegal cigarette rebates, and Defendants have taken advantage of Plaintiffs' compliance with the law to steal away their business with illegal prices and keep the business for themselves.

6.      Plaintiffs are competitors of Defendants and have been injured in various ways by Defendants' violations of the cigarette minimum price law.  Each of the plaintiffs has, for example, lost customers and business when customers switched some or all of their purchases to Defendants to take advantage of Defendants' illegal cigarette prices.  Plaintiffs have also lost business to other wholesalers who received illegal rebates from Defendants and passed those rebates along to retailers.  Plaintiffs have also had the values of their businesses reduced because of Defendants' illegal actions.

7.      The CMSA specifically empowers persons who have been injured by CMSA violations to bring suit against the violators of the Act and recover the damages they have suffered, along with costs, including attorneys' fees.

8.      Plaintiffs bring this suit to recover the damages they have suffered as a result of Defendants' violations of the CMSA and to obtain an injunction preventing Defendants from continuing to violate the law.

## JURISDICTION AND VENUE

9.      This Court has personal jurisdiction over HLA, Core-Mark, McLane, Resnick and Polep because they can be found, reside, and/or transact business in New York State.

10.      Venue is proper in this Court under CPLR § 503 because one of the parties resided in this county at the time this action was commenced.

## PARTIES

11.      Plaintiff **Amsterdam Tobacco Co, Inc.** ("Amsterdam Tobacco") is a New York corporation incorporated in 1924.  It has its principal place of business at 1614 Amsterdam Avenue, New York, New York.  Amsterdam Tobacco is licensed by the State of New York as a cigarette wholesale dealer and was, until recently, licensed as a stamping agent.

12.      Plaintiff **Donohue Candy and Tobacco Co., Inc.** ("Donohue Candy") is a New York corporation incorporated in 1974.  It has its principal place of business at 182 Maple Street, Glens Falls, New York.  Donohue Candy is licensed by the State of New York as a cigarette stamping agent and wholesaler.

13.      Plaintiff **Kingston Candy & Tobacco Co., Inc.** ("Kingston Candy") is a New York corporation incorporated in 1909.  It has its principal place of business at 300 Corporate Drive, Suite #3, Blauvelt, New York.  Kingston Candy is licensed by the State of New York as a cigarette stamping agent and wholesaler.

14.      Plaintiff **Mountain Candy & Cigar Co., Inc.** ("Mountain Candy") is a New York corporation incorporated in 1968.  It has its principal place of business at 40 Lake Street, South Fallsburg, New York.  Mountain Candy is licensed by the State of New York as a cigarette stamping agent and wholesaler.

4

Exhibit A p. 11

15.     Plaintiff **Sunrise Candy & Tobacco Corp.** ("Sunrise Candy") is a New York corporation founded in 1947 and incorporated in 1970.  It has its principal place of business at 150 Crescent Street, Brooklyn, New York.  Sunrise Candy is licensed by the State of New York as a cigarette stamping agent and wholesaler.

16.     Defendant **Harold Levinson Associates, LLC** is a New York limited liability company that is a cigarette distributor in New York State and distributes cigarettes and other products throughout the northeastern United States.  It has its headquarters at 21 Banfi Plaza, Farmingdale, New York, and it has distribution facilities in Albany, New York and elsewhere.

17.     Harold Levinson Associates, LLC was formed on or about August 22, 2014, at about the time the company was acquired by an investment fund run by private equity firm Palm Beach Capital.  Harold Levinson Associates, LLC is the successor in interest to and has assumed the liabilities of Harold Levinson, Inc.

18.     Harold Levinson Associates, Inc. was a New York corporation formed in or about 1977 that had its principal place of business at 21 Banfi Plaza, Farmingdale, New York.

19.     HLA (which term refers here to both Harold Levinson, LLC and Harold Levinson, Inc., collectively) has at all times relevant to this case been a distributor of cigarettes throughout the northeastern United States, including in New York State, and including in this county.

20.     HLA is and has at all times relevant to this case been licensed as a cigarette agent and a cigarette wholesaler by both the New York State Department of Taxation and Finance (the "State Tax Department") and the New York City Department of Finance (the "City Tax Department").

21.     Defendant **Core-Mark Midcontinent, Inc.** ("Core-Mark") is an Arkansas corporation with a business location at 160 Enterprise Road, Johnstown, New York.  Core-Mark

Exhibit A p. 12

Midcontinent is a wholly owned subsidiary of Core-Mark Holding, Inc., a publicly traded company. It conducts the business of Core-Mark Holding, Inc. in New York State and other states.

22.     Core-Mark Midcontinent is and has at all times relevant to this case been licensed as a cigarette agent and a cigarette wholesaler by both the State Tax Department and the City Tax Department, and it has distributed cigarettes throughout New York State, including in this county.

23.     Defendant **McLane/Eastern, Inc.** is a Texas corporation registered to do business in the State of New York. It has a place of business in New York at 2828 McLane Drive, Baldwinsville, New York.

24.     At all times relevant to this case, McLane/Eastern has been registered with the State Tax Department and City Tax Department as a cigarette stamping agent and wholesaler, and it has distributed cigarettes throughout New York State, including in this county.

25.     Defendant **McLane/Midwest, Inc.** is a Texas corporation registered to do business in the State of New York. It has a place of business at 3400 East Main, Danville, Illinois.

26.     At all times relevant to this case, McLane/Midwest has been registered with the State Tax Department as a cigarette stamping agent and wholesaler, and it has distributed cigarettes throughout New York State, including in this county.

27.     McLane/Eastern, Inc. and McLane/Midwest, Inc. are both wholly owned subsidiaries of McLane Companies, Inc., a national distributor.

Case 1:18-cv-01432-KAM-VMS   Document 1-1   Filed 03/08/18   Page 15 of 50 PageID #: 25

28.     Defendant **Plainfield Tobacco and Candy Co., Inc. d/b/a Resnick Distributors** ("Resnick") is a New Jersey corporation registered to do business in New York.  It has its headquarters at 25 Van Dyke Avenue, New Brunswick, New Jersey.

29.     At all times relevant to this case, Resnick has been registered with the State Tax Department and the City Tax Department as a cigarette stamping agent and wholesaler, and it has distributed cigarettes throughout New York State, including in this county.

30.     Defendant **Consumer Product Distributors, Inc. d/b/a J. Polep Distributors** ("Polep") is a New Jersey corporation registered to do business in New York.  It has its headquarters at 705 Meadow Street, Chicopee, Massachusetts.

31.     At all times relevant to this case, Polep has been registered with the State Tax Department and City Tax Department as a cigarette stamping agent and wholesaler, and it has distributed cigarettes throughout New York State, including in this county.

## FACTUAL ALLEGATIONS

## I.      THE CIGARETTE CHAIN OF DISTRIBUTION

32.     The distribution of cigarettes in New York State is subject to laws and regulations that determine who can sell cigarettes and, under the CMSA, the minimum prices at which they can sell cigarettes.

33.     The primary levels of distribution include the following:

   a.   cigarette manufacturers, who produce the cigarettes;

   b.   cigarette stamping agents, who purchase cigarettes from the manufacturers and purchase tax stamps from the government that they then affix to the packs of cigarettes, and who then sell the stamped cigarettes, mostly to wholesalers or retailers;

Exhibit A p. 14

    c. non-stamping wholesalers, sometimes called subjobbers, who purchase stamped cigarettes from stamping agents and sell them mostly to retailers; and

    d. retailers, who sell the cigarettes to consumers.

34. The agents, wholesalers, and retailers must all be licensed by the State Tax Department in order to sell cigarettes in New York State. Similarly, to sell cigarettes in New York City, cigarette agents and wholesalers must be licensed by the City Tax Department.

35. Plaintiffs all are or have been licensed by the State Tax Department as agents or wholesalers. Plaintiffs Amsterdam Tobacco, Sunrise Candy and Mountain Candy have also been licensed by the City Tax Department.

36. Defendants are and have been at all times relevant to this case licensed in New York State as cigarette agents and wholesalers. With the exception of McLane/Midwest, Inc., they have been at all times relevant to this case licensed in New York City as cigarette agents and wholesalers. As part of Defendants' business in New York, they purchase cigarettes from manufacturers, purchase tax stamps from the State Tax Department, affix the tax stamps to cigarette packages, and sell cigarettes to retailers and to other customers, such as smaller wholesalers.

## II. THE CIGARETTE MARKETING STANDARDS ACT

37. In 1985, the New York State Legislature enacted the Cigarette Marketing Standards Act after finding that cigarette distributors in New York, and the jobs they created, were threatened by distributors from neighboring states that already had minimum cigarette price laws. Because the nonresident distributors were making a reasonable and steady profit on cigarette sales in their home states, they could disrupt competition by using that steady profit from their home states to offer "low-ball" prices in New York with which resident distributors

8

Exhibit A p. 15

could not compete. New York thus enacted its own cigarette minimum pricing law—the CMSA—to put New York distributorships on an equal footing with their out-of-state competitors.

38.     The CMSA makes it unlawful for a cigarette agent, with the intent to injure competitors or destroy or substantially lessen competition, to sell cigarettes for less than the minimum prices set in the statute.

39.     The minimum prices are set by a formula in the statute. For a stamping agent, the formula provides for a minimum price that is (i) the price charged by the manufacturer for the cigarettes, plus (ii) the cost of the tax stamps, plus (iii) a mark-up amount set forth in the statute.

40.     The price charged by the manufacturer is set by the manufacturer.

41.     The cost of the tax stamps is set by New York State law and, for cigarettes sold in New York City, by New York City law.

42.     The mark-up amount is set by the CMSA, which provides for different mark-up amounts depending upon the type of customer to whom the stamping agent sells cigarettes.

43.     Where a stamping agent sells to a retail dealer (non-chain store), the mark-up amount is three and seven eighths percent of the "agent's basic cost" (the price charged by the manufacturer plus the cost of the tax stamps), plus two cents per 20-cigarette pack of cigarettes.

44.     A stamping agent can charge less than the minimum price derived using the CMSA formula if the agent specifically files with the State Tax Department proof that its costs are lower than the formula cost.

45.     None of the Defendants has submitted proof to the State Tax Department of costs lower than the CMSA formula cost. Accordingly, the minimum prices each of the Defendants can legally charge are determined using the CMSA formula.

FILED: KINGS COUNTY CLERK 02/06/2018 01:59 PM INDEX NO. 502413/2018

NYSCEF DOC. NO. 1 Case 1:18-cv-01432-KAM-VMS Document 1-1 Filed 03/08/18 Page 18 of 50 PageID #: 28 RECEIVED NYSCEF: 02/06/2018

46.     The State Tax Department periodically issues a publication that calculates minimum cigarette prices following the CMSA formula.  The State Tax Department's Publication 509 issued in October 2017, for example, showed that where the cigarette manufacturer's list price for a carton of cigarettes (20 cigarettes per pack, 10 packs per carton) was $41.64, the minimum price at which the stamping agent could sell to a retail (non-chain) dealer in New York City was $104.23.  This $104.23 was the sum of the $41.64 manufacturer's price, $58.50 for the tax stamps, and a $4.09 markup.

47.     The State Tax Department's publication shows this information about the carton with a manufacturer's list price of $41.64 as follows:

| New York City (sales within New York City) | | Minimum sales prices for standard brands* | | | | |
|---|---|---|---|---|---|---|
| | | Type of sale | | | | |
| Manufacturer's list price ** (per carton) | Agent's basic cost (per carton) | Wholesale (per carton) | | | Retail sales to the consumer | |
| | | Agent to wholesale dealers | Agent to chain stores | Agent to retail dealers | Retail (per carton) | Retail (per pack) |
| $41.64 | $100.14 | $101.22 | $101.85 | $104.23 | $111.52 | $11.16 |

48.     Where a stamping agent gives a rebate or other price concession to a customer, the rebate or price concession is counted as lowering the price of the cigarettes and can push the price below the CMSA minimum.  The stamping agent has the burden of proving that its prices after rebates or other concessions are not below the CMSA minimum.

49.     A stamping agent's intent to injure competitors or to destroy or substantially lessen competition is presumed where the stamping agent has given rebates on cigarettes or sold cigarettes below the minimum price.  The stamping agent then has the burden of proving that it did not have that intent.

50.     A person injured by violations or threatened violations of the CMSA is entitled to institute a lawsuit to enjoin violations of the CMSA and recover damages as well as the costs of suit, including reasonable attorney's fees.

Exhibit A p. 17

## III.    EACH DEFENDANT GIVES REBATES THAT PUSH ITS CIGARETTE PRICES BELOW THE LEGAL MINIMUM

51.    Since before 2012 and continuing until the present time, each of the Defendants has engaged in a broad scheme to give rebates to its customers, driving its cigarette prices below the legal minimums, with the intent to injure competitors and destroy or substantially lessen competition.

52.    Each of the Defendants has list prices for the cigarettes it sells to customers in New York that are at or slightly above the CMSA minimum prices.

53.    By giving cigarette rebates to its customers, each Defendant lowers its cigarette prices below its list prices and below the CMSA minimum prices.

54.    Defendants have extended rebates in various forms.  Most often, they have given their cigarette customers in New York rebates of certain dollar amounts, such as $2 or $3, per carton of cigarettes purchased by the customer.  At other times, they have given rebates in the form of free products.  At still other times, they have built the rebates into up-front or periodic payments provided for in contracts with their customers.

55.    Defendants have disguised their rebates.  Most often, they have mischaracterized the rebates as "credits," such as credits for fictional returned or damaged merchandise.  At other times, Defendants have disguised their rebates by calling them "allowances."  At still other times, they have hidden their rebates based on cigarette sales by mixing them with rebates on non-cigarette products.

56.    Defendants have extended their rebates to retailers as well as to smaller cigarette wholesalers.  Those smaller wholesalers have then passed along some or all of the rebates to their retailer customers.

Exhibit A p. 18

57.     Each of the Defendants has sales representatives in New York who interact directly with its customers.  The sales representatives arrange for the company's rebates to the customers, and they communicate the rebating arrangements to their home offices so the arrangements can be implemented in the company's data systems and so that the customer paperwork can reflect the price reductions.

58.     One senior HLA sales manager, who has been with HLA for 25 years, recently described HLA's rebate amounts as varying by the customer's location, volume of purchases, and other factors.  Around Poughkeepsie, New York, for example, he described the rebates as generally around $2 per carton.

59.     The HLA sales manager further stated that HLA disguises its rebates as "credits" that appear monthly on HLA's billing statements: "I tell you, whatever you bought, 100 cartons times whatever, here's your credit and then we take it off the bill."

60.     HLA has given these secret rebates even though it was fully aware that it was violating the CMSA.  As the sales manager put it, "You know, you're not supposed to do it, there's a law that you're not supposed to do it.  But it's done, you know."

61.     Core-Mark's practices are similar.

62.     According to a senior Core-Mark sales manager, Core-Mark gives rebates of up to $3 per carton to a retailer in New York that is buying 100 cartons of cigarettes a week, but that the exact amount depends on the volume of purchases.  As he said, "It's with each particular customer and how much business they're going to give to us."

63.     Core-Mark's sales manager confirmed that Core-Mark presents its rebates on monthly billing statements as "credits," including, for example, credits for "returns."  Core-Mark often pays these amounts by check.

64.    Core-Mark is also well aware of the CMSA and that the rebates it gives violate the minimum price requirement.  When its sales manager was asked what a retailer should say to auditors if asked about the cigarette rebates, the sales manager instructed that the retailer should lie and say the credits were for merchandise returned or whatever it says on the billing statements.

65.    Core-Mark also, at times, decreases the prices it charges for cigarettes below the legal minimums by granting rebates in the form of up-front or monthly payments provided for in contracts with customers.  These price concessions are determined based, in whole or in part on the customer's cigarette purchases and have the effect of reducing the customer's price of cigarettes.

66.    McLane also violates the CMSA by offering rebates that push its prices below the legal minimums.

67.    McLane gives rebates on the cigarettes it sells to customers in New York as part of its program of "allowances" or "incentives."  Under this program, it makes payments to the customers every four weeks in an amount based on the volume of the customer's purchases from McLane, including its purchases of cigarettes.  A customer that purchases only cigarettes from McLane receives a rebate based entirely on its cigarette purchases.  A customer that purchases cigarettes and other goods, receives a rebate based in part on its cigarette purchases.

68.    McLane calculates its periodic "allowance" or "incentive" amounts after examining the customer's sales history, including its purchases of cigarettes.

69.    As a general matter, McLane's allowances are smaller for customers with low cigarette sales and higher for customers with high cigarette sales.  An experienced McLane sales representative described the incentive payments as "driven" by cigarette volume.

70.     The McLane sales representative stressed that he was being careful not to call McLane's allowances a "rebate," because that would be illegal.  Despite McLane's efforts to avoid the word "rebate," its payments served to lower its prices on cigarette sales to customers in New York below the CMSA minimum prices.

71.     Resnick similarly violates the CMSA by giving rebates that push its prices below the legal minimums.

72.     A senior Resnick sales manager described that Resnick would give a rebate of $2 or $2.25 a carton to a retailer in Queens that sells 75 cartons of cigarettes a week and has good foot traffic.  He noted that Resnick's rebates will vary depending upon a store's volume of cigarette purchases.  As he said, "you know, it's a volume game."

73.     The sales manager said that Resnick characterizes its rebates as "credits" at the end of each month, and that these "credits" are deducted from the invoice price for the cigarettes.

74.     Polep also gives rebates that push its cigarette prices to customers in New York below the legal minimums.

75.     According to a senior Polep district sales manager, Polep will give a rebate of between $2 and $2.50 per carton of cigarettes for a store in New York that purchases 100 cartons of cigarettes a week, with the precise rebate amount depending on the customer's volume of cigarette purchases and its mix of other merchandise purchased.

76.     Rather than disclosing the rebates on its billing statements, Polep usually refers to them as "credits," such as credits for nonexistent merchandise returned.

77.     Polep gives cigarette rebates even though it is fully aware that the CMSA barred cigarette sales at prices below the legal minimum.  When asked if a store must report that rebate,

the Polep district manager said, "You shouldn't, the money's illegal." When asked why wholesalers are giving rebates, the district manager answered, "because everybody's greedy."

## IV.  DEFENDANTS HAVE INTENTIONALLY INJURED PLAINTIFFS AND COMPETITION WITH THEIR REBATES

78.     Plaintiffs have all been competitors of Defendants in the wholesale sale of cigarettes in New York State.

79.     Unlike Defendants, Plaintiffs do not offer rebates on cigarettes they sell to customers in New York.

80.     Defendants have repeatedly, and intentionally, taken business away from Plaintiffs and precluded Plaintiffs from gaining business by offering to sell cigarettes and selling cigarettes at prices below the CMSA minimum prices. Plaintiffs could not legally match these illegal prices in good faith. Accordingly, they lost business from their customers to Defendants or could not gain business from prospective customers who took Defendants' illegally low prices. Moreover, Defendants have destroyed or substantially lessened the competition that the State Legislature sought to protect by barring illegal cigarette pricing in the CMSA.

81.     Defendants themselves have the most complete records of the many instances in which they have gained business by offering prices below the CMSA minimum prices to customers in New York. Each Defendant has records and information on the customers it solicited, the pricing it offered and charged, the manners in which it disguised its rebates, and the amount of business it gained.

82.     Even though each Defendant has the most detailed information about the business it gained by charging cigarette prices below the CMSA minimum prices, Plaintiffs have learned about instances of Defendants' misconduct, and those instances illustrate Defendants' violations.

83.     HLA's illegal rebates are illustrated by its dealings with the commonly owned retailers Lark Central Market, Pine Hills Market, and Quail Street Market, in Albany, New York. In or about Fall 2016, HLA began to give rebates to these retailers of about $2.50 for each carton of cigarettes they purchased. The rebates pushed HLA's prices below the minimum prices permitted under the CMSA.

84.     Prior to HLA's rebating to Lark Market, Pine Hills Market and Quail Street Market, these retailers had purchased cigarettes from Plaintiff Donohue Candy at prices equal to or very near the CMSA legal minimums. Once HLA offered its rebates, these retailers severely decreased their purchases from Donohue Candy, and they switched much of their business to HLA because it offered lower, illegal prices. Donohue Candy also lost sales of non-cigarette products.

85.     HLA has not made good faith efforts to determine whether Donohue Candy or any of its competitors offered Lark Market, Pine Hills Market and Quail Street Market legal prices for cigarettes equal to HLA's post-rebate prices.

86.     HLA offered its rebates to Lark Market, Pine Hills Market and Quail Street Market with the intent of beating the legal prices of its competitors and gaining these retailers' business for itself.

87.     HLA's illegal rebates are also illustrated by its dealings with retailer KRS Petro in Boiceville, New York. In or about November 2016, HLA began to give rebates to KRS Petro in the form of a percentage back on its cigarette and other orders. The rebates pushed HLA's prices below the minimum prices permitted under the CMSA.

88.     Prior to HLA's rebating to KRS Petro, this retailer had been purchasing cigarettes from Plaintiff Mountain Candy at prices equal to or very near the CMSA legal minimums. Once

16

Exhibit A p. 23

Case 1:18-cv-01432-KAM-VMS Document 1-1 Filed 03/08/18 Page 25 of 50 PageID #: 35

HLA offered its rebates, KRS Petro ceased purchasing cigarettes from Mountain Candy at legal prices and switched to HLA because it offered lower, illegal prices. Mountain Candy also lost sales of non-cigarette products.

89.     HLA has not made good faith efforts to determine whether Mountain Candy or any of its competitors offered KRS Petro legal prices equal to HLA's post-rebate prices.

90.     HLA offered its rebates to KRS Petro with the intent of beating the legal prices of its competitors and gaining KRS Petro's business for itself.

91.     HLA's illegal rebates are further illustrated by its dealings with retailer BG Singh LLC in Niagara Falls, New York ("BG Singh"). In or about mid-2016, HLA began to give rebates to BG Singh of $1 for each carton of cigarettes it purchased. The rebate pushed HLA's prices below the minimum prices permitted under the CMSA.

92.     Prior to HLA's rebating to BG Singh, this retailer had purchased cigarettes from Plaintiff Mountain Candy at prices equal to or very near the CMSA legal minimums. After HLA offered its rebates, BG Singh ceased purchasing cigarettes from Mountain Candy at legal prices, and switched to HLA because it offered lower, illegal prices. Mountain Candy also lost sales of non-cigarette products.

93.     HLA has not made good faith efforts to determine whether Mountain Candy or any of its competitors offered BG Singh legal prices for cigarettes equal to HLA's post-rebate prices.

94.     HLA offered its rebates to BG Singh with the intent of beating the legal prices of its competitors and gaining BG Singh's business for itself.

95.     HLA's illegal rebates are further illustrated by its dealings with retailer Meshar Inc. in Warwick, New York ("Meshar"). In or about mid-2015, HLA began to give rebates to

Exhibit A p. 24

FILED: KINGS COUNTY CLERK 02/06/2018 01:59 PM INDEX NO. 502413/2018

NYSCEF DOC. NO. 1 Case 1:18-cv-01432-KAM-VMS Document 1-1 Filed 03/08/18 Page 26 of 50 PageID #: 36 RECEIVED NYSCEF: 02/06/2018

Meshar of $2 per carton of cigarettes. The rebate pushed HLA's prices below the minimum prices permitted under the CMSA.

96.     Prior to HLA's rebating to Meshar, this retailer had purchased cigarettes from Plaintiff Mountain Candy at prices equal to or very near the CMSA legal minimums. Once HLA offered its rebates, Meshar ceased purchasing cigarettes from Mountain Candy at legal prices and switched to HLA because it offered lower, illegal prices. In addition, Mountain Candy lost sales of non-cigarette products.

97.     HLA has not made good faith efforts to determine whether Mountain Candy or any of its competitors offered Meshar legal prices equal to HLA's post-rebate prices.

98.     HLA offered its rebates to Meshar with the intent of beating the legal prices of its competitors and gaining Meshar's business for itself.

99.     HLA's illegal rebates are further illustrated by its dealings with retailer Tobacco Corner in Huntington Station, New York. HLA has been giving rebates to Tobacco Corner for several years, and its rebates have pushed HLA's prices below the minimum prices permitted under the CMSA.

100.     Plaintiff Sunrise Candy sells small amounts of cigarettes to Tobacco Corner at prices equal to or very near the CMSA legal minimums. Tobacco Corner's owner has repeatedly informed Sunrise Candy's owner that he would purchase more cigarettes from Sunrise Candy if only Sunrise Candy would offer rebates like HLA.

101.     HLA has not made good faith efforts to determine whether Sunrise Candy or any of its competitors offered Tobacco Corner legal prices equal to HLA's post-rebate prices.

102.     HLA extends its rebates to Tobacco Corner with the intent of beating the legal prices of its competitors and keeping Tobacco Corner's business for itself.

18

Exhibit A p. 25

103.     HLA's illegal rebates are also illustrated by its dealings with smaller wholesaler (also referred to as a "subjobber") A&G Wholesale Candy & Paper Bag, Inc. in the Bronx, New York ("A&G Wholesale").  In or about 2015, HLA began to give rebates to A&G Wholesale of $1 for each carton of cigarettes purchased.  The rebate pushed HLA's prices below the minimum prices permitted under the CMSA.

104.     Prior to HLA's rebating to A&G Wholesale, the subjobber had purchased cigarettes from Plaintiff Amsterdam Tobacco at prices equal to or very near the CMSA legal minimums.  Once HLA offered its rebates, A&G Wholesale reduced by more than half its purchases of cigarettes from Amsterdam Tobacco, which were at legal prices, and switched that business to HLA because it offered lower, illegal prices.  Amsterdam Tobacco went from selling about $5 million in cigarettes to A&G Wholesale in 2014, to selling about $2 million in 2017. Amsterdam Tobacco also lost sales of non-cigarette products.

105.     HLA has not made good faith efforts to determine whether Amsterdam Tobacco or any of its competitors offered A&G Wholesale legal prices equal to HLA's post-rebate prices.

106.     HLA offered its rebates to A&G Wholesale with the intent of beating the prices of its competitors and gaining A&G Wholesale's business for itself.

107.     HLA's illegal rebates are further illustrated by its dealings with the commonly owned retailer grocery stores Corner Grocery, East Village Farm & Grocery, GreenStar Foods, and Freshco Grocery & Deli, in New York, New York.  In or about 2014, HLA began to give rebates to these retailers of about $2 for each carton of cigarettes they purchased.  The rebates pushed HLA's prices below the minimum prices permitted under the CMSA.

108.     Prior to HLA's rebating to Corner Grocery, East Village Farm & Grocery, GreenStar Foods, and Freshco Grocery & Deli, these retailers had purchased cigarettes from

Exhibit A p. 26

Plaintiff Amsterdam Tobacco at prices equal to or very near the CMSA legal minimums. Once HLA offered its rebates, these retailers severely decreased their purchases from Amsterdam Tobacco, and they switched much of their business to HLA because it offered lower, illegal prices. Amsterdam Tobacco also lost sales of non-cigarette products.

109. HLA has not made good faith efforts to determine whether Amsterdam Tobacco or any of its competitors offered these retailers legal prices for cigarettes equal to HLA's post-rebate prices.

110. HLA offered its rebates to Corner Grocery, East Village Farm & Grocery, GreenStar Foods, and Freshco Grocery & Deli with the intent of beating the legal prices of its competitors and gaining these retailers' business for itself.

111. HLA's illegal rebates are further illustrated by its dealings with retailer East & East, Inc. in Middletown, New York ("East & East"). In or about 2014, HLA began to give rebates to East & East that pushed HLA's prices below the minimum prices permitted under the CMSA.

112. Prior to HLA's rebating to East & East, this retailer had purchased cigarettes from Plaintiff Kingston Candy at prices equal to or very near the CMSA legal minimums. Once HLA offered its rebates, East & East ceased purchasing cigarettes from Kingston Candy at legal prices and switched to HLA because it offered lower, illegal prices. In addition, Kingston Candy lost sales of non-cigarette products.

113. HLA has not made good faith efforts to determine whether Kingston Candy or any of its competitors offered East & East legal prices equal to HLA's post-rebate prices.

114. HLA offered its rebates to East & East with the intent of beating the legal prices of its competitors and gaining East & East's business for itself.

115.     HLA's illegal rebates are further illustrated by its dealings with retailer Liberty Food Mart, Inc. in Liberty, New York ("Liberty Food Mart").  In or about 2014, HLA began to give rebates to Liberty Food Mart that pushed HLA's prices below the minimum prices permitted under the CMSA.

116.     Prior to HLA's rebating to Liberty Food Mart, this retailer had purchased cigarettes from Plaintiff Kingston Candy at prices equal to or very near the CMSA legal minimums.  Once HLA offered its rebates, Liberty Food Mart ceased purchasing cigarettes from Kingston Candy at legal prices and switched to HLA because it offered lower, illegal prices.  In addition, Kingston Candy lost sales of non-cigarette products.

117.     HLA has not made good faith efforts to determine whether Kingston Candy or any of its competitors offered Liberty Food Mart legal prices equal to HLA's post-rebate prices.

118.     HLA offered its rebates to Liberty Food Mart with the intent of beating the legal prices of its competitors and gaining Liberty Food Mart's business for itself.

119.     Core-Mark's illegal rebates are illustrated by its dealings with subjobber Tri-State Candy Wholesale, Inc. in Maspeth, Queens, New York ("Tri-State").  In or about 2014, Core-Mark began to give rebates to Tri-State of $1 for each carton of cigarettes purchased.  The rebate pushed Core-Mark's prices below the minimum prices permitted under the CMSA.

120.     Prior to Core-Mark's rebating to Tri-State, the subjobber had purchased cigarettes from Plaintiff Amsterdam Tobacco at prices equal to or very near the CMSA legal minimums. Once Core-Mark offered its rebates, Tri-State reduced its purchases of cigarettes from Amsterdam Tobacco at legal prices and switched much of its business to Core-Mark because it offered lower, illegal prices.  Amsterdam Tobacco went from selling over $13 million in

21

Exhibit A p. 28

cigarettes to Tri-State in 2014 to selling only about $1.2 million in 2017. Amsterdam Tobacco also lost sales of non-cigarette products.

121.    Core-Mark has not made good faith efforts to determine whether Amsterdam Tobacco or any of its competitors offered Tri-State legal prices equal to Core-Mark's post-rebate prices.

122.    Core-Mark offered its rebates to Tri-State with the intent of beating the prices of its competitors and gaining Tri-State's business for itself.

123.    By granting illegal prices, Core-Mark had hooked Tri-State on rebates. In about 2014, Tri-State contacted Plaintiff Sunrise Tobacco about possibly becoming a supplier, but Tri-State lost interest when Sunrise Tobacco told Tri-State that it would not rebate.

124.    Core-Mark's illegal rebates are further illustrated by its dealings with chain retailer Holbrook Development Corp. in Holbrook, Long Island, New York ("Holbrook"). In or about September 2016, Core-Mark began to give rebates to Holbrook of $2 per carton of cigarettes. The rebate pushed Core-Mark's cigarette prices below the minimum prices permitted under the CMSA.

125.    Prior to Core-Mark's rebating to Holbrook, this retailer had purchased cigarettes from Plaintiff Mountain Candy at prices equal to or very near the CMSA legal minimums. Once Core-Mark offered its rebate, Holbrook ceased purchasing cigarettes from Mountain Candy at legal prices and switched to Core-Mark because it offered lower, illegal prices. Mountain Candy also lost sales of non-cigarette products.

126.    Core-Mark has not made good faith efforts to determine whether Mountain Candy or any of its competitors offered Holbrook legal prices equal to Core-Mark's post-rebate prices.

Case 1:18-cv-01432-KAM-VMS   Document 1-1   Filed 03/08/18   Page 31 of 50 PageID #: 41

127.    Core-Mark offered its rebates to Holbrook with the intent of beating the prices of its competitors and gaining Holbrook's business for itself.

128.    Core-Mark's rebating is also illustrated by its dealings with the commonly owned stores Anchor Beverage Center, in South Glens Falls, New York, and ASC Mart, in Mechanicville, New York.  In or about late 2016, Core-Mark gave rebates to these retailers that pushed Core-Mark's cigarette prices to them below the minimum prices permitted under the CMSA.

129.    Prior to Core-Mark's rebating to Anchor Beverage Center and ASC Mart, Plaintiff Donohue Candy had sold cigarettes to these retailers at prices equal to or very near the CMSA legal minimums.  Once Core-Mark offered its rebates, the stores ceased purchasing cigarettes from Donohue Candy at legal prices and switched to Core-Mark because it offered lower, illegal prices.  Donohue Candy also lost sales of non-cigarette products.

130.    Core-Mark has not made good faith efforts to determine whether Donohue Candy or any of its competitors offered these stores legal prices equal to Core-Mark's post-rebate prices.

131.    Core-Mark offered its rebates to Anchor Beverage Center and ASC Mart with the intent of beating the prices of its competitors and gaining the customers' business for itself.

132.    Core-Mark's illegal rebates are further illustrated by its dealings with retailer Mahima Corporation in Ellenville, New York ("Mahima").  In or about December 2013, Core-Mark began to give rebates to Mahima in the form of monthly checks for about $500.  The rebates pushed Core-Mark's cigarette prices below the minimum prices permitted under the CMSA.

133.    Prior to Core-Mark's rebating to Mahima, the retailer had purchased cigarettes from Plaintiff Mountain Candy at prices equal to or very near the CMSA legal minimums.  Once

23

Core-Mark offered its rebate, Mahima ceased purchasing cigarettes from Mountain Candy at legal prices and switched to Core-Mark because it offered lower, illegal prices. Mountain Candy also lost sales of non-cigarette products.

134.   Core-Mark has not made good faith efforts to determine whether Mountain Candy or any of its competitors offered Mahima legal prices equal to Core-Mark's post-rebate prices.

135.   Core-Mark offered its rebates to Mahima with the intent of beating the prices of its competitors and gaining Mahima's business for itself.

136.   Core-Mark's illegal rebates are further illustrated by its dealings with retailer Ralco Enterprises Inc. in Walden, New York ("Ralco"). In or about October 2013, Core-Mark began to give rebates to Ralco in the form of monthly checks for between about $600 and $800. The rebates pushed Core-Mark's cigarette prices below the minimum prices permitted under the CMSA.

137.   Prior to Core-Mark's rebating to Ralco, the retailer had purchased cigarettes from Plaintiff Mountain Candy at prices equal to or very near the CMSA legal minimums. Once Core-Mark offered its rebate, Ralco ceased purchasing cigarettes from Mountain Candy at legal prices and switched to Core-Mark because it offered lower, illegal prices. Mountain Candy also lost sales of non-cigarette products.

138.   Core-Mark has not made good faith efforts to determine whether Mountain Candy or any of its competitors offered Ralco legal prices equal to Core-Mark's post-rebate prices.

139.   Core-Mark offered its rebates to Ralco with the intent of beating the prices of its competitors and gaining Ralco's business for itself.

140.   McLane's illegal rebates are illustrated by its dealings with Chestnut Petroleum Distributors, Inc. ("Chestnut Petroleum"). Chestnut Petroleum operates gas and convenience

Exhibit A p. 31

stores in New York, New Jersey and Connecticut, and is based in New Paltz, New York. In or about 2014, Chestnut Petroleum entered into a contract with McLane in which Chestnut Petroleum agreed to purchase cigarettes from McLane and McLane agreed to give Chestnut Petroleum a check of $1,500 per month, which included rebates, or "allowances," based on Chestnut Petroleum's purchases of cigarettes from McLane. These rebates pushed McLane's cigarette prices below the minimum prices permitted under the CMSA.

141.    Prior to McLane's contract with Chestnut Petroleum, Chestnut Petroleum had purchased cigarettes from Plaintiff Kingston Candy at prices equal to or very near the CMSA legal minimums. Once McLane offered its rebates, Chestnut Petroleum ceased making purchases from Kingston Candy at legal prices and switched its business to McLane because it offered lower, illegal prices. Kingston Candy also lost sales of non-cigarette products.

142.    McLane has not made good faith efforts to determine whether Kingston Candy or any of its competitors offered Chestnut Petroleum legal prices for cigarettes equal to McLane's post-rebate prices.

143.    McLane offered its rebates to Chestnut Petroleum with the intent of beating the legal prices of its competitors and gaining these retailers' business for itself.

144.    Resnick's illegal rebates are illustrated by its dealings with retailer Sonal Food Corp. in Woodbourne, New York ("Sonal"). In or about mid-2012, Resnick began to give rebates to Sonal of $2 per carton of cigarettes. The rebates pushed Resnick's cigarette prices below the minimum prices permitted under the CMSA.

145.    Prior to Resnick's rebating to Sonal, this retailer had purchased cigarettes from Plaintiff Mountain Candy at prices equal to or very near the CMSA legal minimums. Once Resnick offered its rebates, Sonal ceased purchasing cigarettes from Mountain Candy at legal

prices and switched to Resnick because it offered lower, illegal prices. Mountain Candy also lost sales of non-cigarette products.

146.    Resnick has not made good faith efforts to determine whether Mountain Candy or any of its competitors offered Sonal legal prices equal to Resnick's post-rebate prices.

147.    Resnick offered its rebates to Sonal with the intent of beating the prices of its competitors and gaining Sonal's business for itself.

148.    Polep's illegal rebates are illustrated by its dealings with retailer Congers BP, Inc. in Congers, New York ("Congers"). In or about 2017, Polep began to give rebates to Congers of $2 per carton of cigarettes. The rebate pushed Polep's prices below the minimum prices permitted under the CMSA.

149.    Prior to Polep's rebating to Congers, this retailer had purchased cigarettes from Plaintiff Kingston Candy at prices equal to or very near the CMSA legal minimums. Once Polep offered its rebates, Congers ceased purchasing cigarettes from Kingston Candy at legal prices and switched to Polep because it offered lower, illegal prices. In addition, Kingston Candy lost sales of non-cigarette products.

150.    Polep has not made good faith efforts to determine whether Kingston Candy or any of its competitors offered Congers legal prices equal to Polep's post-rebate prices.

151.    Polep offered its rebates to Congers with the intent of beating the legal prices of its competitors and gaining Congers' business for itself.

152.    In about 2016, one Glens Falls, New York customer of Plaintiff Donohue Candy showed Donohue Candy's vice president an e-mail from Defendant Polep in which Polep offered the customer a rebate of $2.50 per carton. Donohue Candy is a secondary supplier of cigarettes

FILED: KINGS COUNTY CLERK 02/06/2018 01:59 PM
INDEX NO. 502413/2018

NYSCEF DOC. NO. 1 Case 1:18-cv-01432-KAM-VMS Document 1-1 Filed 03/08/18 Page 35 of 50 PageID #: 45 RECEIVED NYSCEF: 02/06/2018

for the retailer, but it would have been the primary supplier if Polep had not extended rebates that pushed its prices below the CMSA minimums.

153.     Plaintiff Amsterdam Tobacco has been so badly harmed by Defendant's illegal rebating practices that it has given up its agent license and thus its business as a stamping agent.

154.     Defendants' rebating practices also drove out of business subjobbers who had been customers of Plaintiffs, thereby harming Plaintiffs.  For example, HLA's rebating practices drove out of business subjobbers Krcho Wholesale Inc., and M. Futterman Corp., which had been customers of Plaintiff Amsterdam Tobacco.  These two subjobbers had refused to give illegal rebates.  Amsterdam Tobacco was harmed by its loss of sales to these subjobbers because of HLA's rebating.

## COUNT I

### Violations of New York Cigarette Marketing Standards Act
### N.Y. Tax Law § 484

155.     Plaintiffs reassert and incorporate by reference all paragraphs set forth above as if restated herein.

156.     Defendants HLA, Core-Mark, McLane, Resnick and Polep have each violated N.Y. Tax Law § 484 by offering to sell and selling cigarettes at less than the minimum prices set by the CMSA, and doing so with the intent to injure competitors or destroy or substantially lessen competition.  Throughout the time period relevant herein, each of these Defendants has offered and given customers rebates on cigarettes that drove the prices for such cigarettes below the applicable minimum prices for the cigarettes, and they did so with the intention of taking customers away from competitors, including Plaintiffs, and keeping them.

157.     As a result of Defendants' violations, Plaintiffs have been injured in amounts to be determined at trial.

Exhibit A p. 34

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that judgment be entered against Defendants HLA, Core-

Mark, McLane, Resnick and Polep for violations of the New York Cigarette Marketing

Standards Act as follows:

(a)     Enjoining and restraining them from engaging in any conduct, conspiracy, contract, or agreement, and from adopting or following any practice, plan, program, scheme, artifice or device similar to, or having a purpose and effect similar to, the conduct complained of above;

(b)     Directing that Defendants, pursuant to the New York Cigarette Marketing Standards Act, pay damages to Plaintiffs;

(c)     Directing that Defendants pay Plaintiffs' fees and costs, including attorneys' fees as provided by law;

(d)     Directing such other equitable relief as may be necessary to redress Defendants' violations of New York law; and

(e)     Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a jury trial.

Dated: New York, New York
      February 6, 2018

Respectfully Submitted,

Randall M. Fox
Kirby McInerney LLP
825 Third Avenue, 16th Floor
New York, N.Y. 10022
Tel: (212) 371-6600
Fax: (212) 751-2540
rfox@kmllp.com

*Counsel for Plaintiffs*

28

# Document 3

Affidavits of Service of Summons, Complaint,
and Notice of Electronic Filing, dated February
9, 2018

FILED: KINGS COUNTY CLERK 02/09/2018 04:45 PM
INDEX NO. 502413/2018

NYSCEF DOC. NO. 18   Case 1:18-cv-01432-KAM-VMS   Document 1-1   Filed 03/08/18   Page 38 of 50 PageID #: 48   RECEIVED NYSCEF: 02/09/2018

## SUPREME COURT OF THE STATE OF NEW YORK
## COUNTY OF KINGS

|  |  |
|---|---|
| AMSTERDAM TOBACCO CO., INC., DONOHUE CANDY AND TOBACCO CO., INC., KINGSTON CANDY & TOBACCO CO., INC., MOUNTAIN CANDY & CIGAR CO., INC., and SUNRISE CANDY & TOBACCO CORP., | Index No. 502413/2018 |

Plaintiffs,

**AFFIDAVIT OF SERVICE**

v.

HAROLD LEVINSON ASSOCIATES, LLC, CORE-MARK MIDCONTINENT, INC., MCLANE/EASTERN, INC., MCLANE/MIDWEST, INC., PLAINFIELD TOBACCO AND CANDY CO., INC. D/B/A RESNICK DISTRIBUTORS, and CONSUMER PRODUCT DISTRIBUTORS, INC. D/B/A J. POLEP DISTRIBUTION SERVICES,

Defendants.

STATE OF NEW YORK          )
COUNTY OF NEW YORK     )
                                             ) ss.:

The undersigned being duly sworn, deposes and says:

RICARDO WRIGHT is not a party to the action, is over 18 years of age, and is a resident of the State of New York, residing in Kings County.

That on February 9, 2018, at approximately 1:40 pm, Deponent served the within Summons and Complaint, as well as the Notice of Electronic Filing, upon: Core-mark Midcontinent, Inc., c/o National Registered Agents, Inc.; McLane/Eastern, Inc., c/o CT Corporations System; and McLane/Midwest, Inc., c/o CT Corporations System, all located at 111 Eighth Avenue, New York, New York 10011.

Exhibit A p. 37

FILED: KINGS COUNTY CLERK 02/09/2018 04:45 PM INDEX NO. 502413/2018

NYSCEF DOC. NO. 1 Case 1:18-cv-01432-KAM-VMS Document 1-1 Filed 03/08/18 Page 39 of 50 PageID #: 49 RECEIVED NYSCEF: 02/09/2018

Service was effectuated by personal delivery, by delivering to and leaving with Elena Boutakova, Senior Intake Specialist, a true and correct copy of the aforesaid documents at the address above.

At the time of said service, Elena Boutakova stated that she is duly authorized to accept service of legal documents on behalf of the aforesaid entities and acknowledged service. Elena Boutakova is described as a Hispanic female, approximately 45-50 years of age, 5'4'' tall, 135-140 lbs., and had light brown hair.

Furthermore, on February 8, 2018, Deponent served the within Summons and Complaint, as well as the Notice of Electronic Filing, upon the following:

> Mr. Jeffrey Polep, Chairman of the Board of Directors, Consumer Product Distributors, Inc., d/b/a J. Polep Distribution Services
>    Address: 705 Meadow Street, Chicopee, Massachusetts 01013

> Mr. Steven Resnick, President, Plainfield Tobacco and Candy Co., Inc. d/b/a Resnick Distributors
>    Address: 25 Van Dyke Avenue, New Brunswick, New Jersey 08901

Service was effectuated by mail delivery, by delivering a true and correct copy of: (1) the Summons and Complaint, (2) two copies of a Statement of Service by Mail and Acknowledgement of Receipt by Mail of Summons and Complaint, (3) the Notice of Electronic Filing, and (4) a postage paid return address envelope, to the addresses above via first class certified mail with receipt of acceptance, to the U.S. Postal Service located at 909 3rd Avenue, New York, NY 10022.

_____
Ricardo Wright

Sworn to before me on this 9th day
of February 2018.

_____
Notary Public

KARINA KOSHARSKYY
Notary Public, State of New York
No. 02KO6203612
Qualified in New York County
Commission Expires April 13, 20__

2

Case 1:18-cv-01432-KAM-VMS   Document 1-1   Filed 03/08/18   Page 40 of 50 PageID #: 50

## SUPREME COURT OF THE STATE OF NEW YORK
## COUNTY OF KINGS

AMSTERDAM TOBACCO CO., INC.,
DONOHUE CANDY AND TOBACCO CO.,
INC., KINGSTON CANDY & TOBACCO
CO., INC., MOUNTAIN CANDY & CIGAR
CO., INC., and SUNRISE CANDY &
TOBACCO CORP.,

           Plaintiffs,

v.

HAROLD LEVINSON ASSOCIATES, LLC,
CORE-MARK MIDCONTINENT, INC.,
MCLANE/EASTERN, INC.,
MCLANE/MIDWEST, INC., PLAINFIELD
TOBACCO AND CANDY CO., INC. D/B/A
RESNICK DISTRIBUTORS, and
CONSUMER PRODUCT DISTRIBUTORS,
INC. D/B/A J. POLEP DISTRIBUTION
SERVICES,

           Defendants.

Index No. 502413/2018

**AFFIDAVIT OF SERVICE**

STATE OF NEW YORK       )
COUNTY OF NEW YORK   )
                 ) ss.:

The undersigned being duly sworn, deposes and says:

    RANDALL FOX is not a party to the action, is over 18 years of age, and is a resident of

the State of New York, residing in New York County.

    That on February 8, 2018, at 5:40 pm, Deponent served the within Summons and

Complaint, as well as the Notice of Electronic Filing, upon Harold Levinson Associates, LLC.

FILED: KINGS COUNTY CLERK 02/09/2018 04:45 PM INDEX NO. 502413/2018

NYSCEF DOC. NO. 1 Case 1:18-cv-01432-KAM-VMS Document 1-1 Filed 03/08/18 Page 41 of 50 PageID #: 51 RECEIVED NYSCEF: 02/09/2018

Service was effectuated by electronic delivery, by delivering a true and correct copy of the aforesaid documents to the attorney for Harold Levinson Associates, LLC, Andrew Lankler of Baker Botts, LLP, via e-mail to andrew.lankler@bakerbotts.com.

On February 8, 2018, at 5:44 pm, Andrew Lankler accepted service on behalf of Harold Levinson Associates, LLC via e-mail.

_____
Randall Fox

Sworn to before me on this 9th day
of February 2018.

_____
Notary Public

KARINA KOSHARSKYY
Notary Public, State of New York
No. 02KO6203612
Qualified in New York County
Commission Expires April 13, 2021

2

Exhibit A p. 40

# Document 4

Stipulation to Extend Time to Move, Answer, or Otherwise Respond to Complaint, dated February 26, 2018

FILED: KINGS COUNTY CLERK 02/26/2018 01:05 PM INDEX NO. 502413/2018

NYSCEF DOC. NO. 18 Case 1:18-cv-01432-KAM-VMS Document 1-1 Filed 03/08/18 Page 43 of 50 PageID #: 53 RECEIVED NYSCEF: 02/26/2018

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

------------------------------------------- x
                                             :

AMSTERDAM TOBACCO CO., INC.,         :
DONOHUE CANDY AND TOBACCO CO., INC.,   :
KINGSTON CANDY & TOBACCO CO. INC.,    :
MOUNTAIN CANDY & CIGAR CO., INC., and   :
SUNRISE CANDY & TOBACCO CORP.,      :
                                             :

                      Plaintiffs,      :  Index No.: 502413/2018
                                             :

      - v -                                 :
                                           :

HAROLD LEVINSON ASSOCIATES, LLC,    :
CORE-MARK MIDCONTINENT, INC.,      :
MCLANE/EASTERN, INC.,            :
MCLANE/MIDWEST, INC., PLAINFIELD     :
TOBACCO AND CANDY CO., INC. D/B/A    :
RESNICK DISTRIBUTORS, and CONSUMER   :
PRODUCT DISTRIBUTORS, INC. D/B/A J.   :
POLEP DISTRIBUTION SERVICES,      :
                                           :

                   Defendants.     :
------------------------------------------- x

## STIPULATION TO EXTEND TIME TO MOVE,
## ANSWER, OR OTHERWISE RESPOND TO COMPLAINT

WHEREAS, Plaintiffs filed their complaint in this action (the "Complaint") on February

6, 2018.

WHEREAS, pursuant to CPLR § 3012, the various Defendants have 20 or 30 days from

service to move, answer, or otherwise respond to the Complaint;

WHEREAS, the parties conferred and agreed upon the status of service and to extend the

time that Defendants have to move, answer, or otherwise respond to the Complaint.

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and between

the parties, that

Exhibit A p. 42

1. For those Defendants who were served by mail, their signatures hereon shall constitute their acknowledgement of receipt of service of the Summons and Complaint and shall constitute proof of service.

2. As of the date hereon, service has been properly completed on all Defendants pursuant to CPLR Article 3.

3. Defendants' time to move, answer, or otherwise respond to the Complaint is extended until April 9, 2018.

4. Except as set forth above, the parties to this stipulation reserve all rights and defenses they may have, including but not limited to any defenses based on lack of personal jurisdiction and/or improper venue, and entry into this stipulation shall not impair or otherwise affect any such rights or defenses.


Dated: New York, New York
        February 23, 2018

FILED: KINGS COUNTY CLERK 02/26/2018 01:05 PM
INDEX NO. 502413/2018

NYSCEF DOC. NO. 18    Case 1:18-cv-01432-KAM-VMS    Document 1-1    Filed 03/08/18    Page 45 of 50 PageID #: 55    RECEIVED NYSCEF: 02/26/2018

Randall M. Fox
KIRBY McINERNEY LLP
825 Third Avenue, 16th Floor
New York, New York 10022
Tel: (212) 371-6600
rfox@kmllp.com

*Attorneys for Plaintiffs*

Scott A. Martin
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, New York 10004
Tel: (646) 357-1100
smartin@hausfeld.com

*Attorneys for Defendant Core-Mark
Midcontinent, Inc.*

Marvin J. Brauth
WILENTZ, GOLDMAN & SPITZER
90 Woodbridge Center Drive, Suite 900
Woodbridge, New Jersey 07095
Tel: (732) 855-6084
mbrauth@wilentz.com

*Attorneys for Plainfield Tobacco and
Candy Co., Inc.*

Andrew M. Lankler
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, New York 10112
Tel: (212) 408-2516
andrew.lankler@bakerbotts.com

*Attorneys for Defendant Harold Levinson
Associates, LLC*

Breon S. Peace
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Tel: (212) 225-2059
bpeace@cgsh.com

*Attorneys for Defendants McLane/Eastern,
Inc. and McLane/Midwest, Inc.*

Robert J. Koshgarian
O'CONNELL & ARONOWITZ, P.C.
54 State Street
Albany, New York 12207
Tel: (518) 462-5601
bkoshgarian@oalaw.com

*Attorneys for Defendant Consumer Product
Distributors, Inc.*

3

_____
Randall M. Fox
KIRBY McINERNEY LLP
825 Third Avenue, 16th Floor
New York, New York  10022
Tel: (212) 371-6600
rfox@kmllp.com

*Attorneys for Plaintiffs*


_____
Andrew M. Lankler
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, New York  10112
Tel: (212) 408-2516
andrew.lankler@bakerbotts.com

*Attorneys for Defendant Harold Levinson
Associates, LLC*


_____
Scott A. Martin
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, New York  10004
Tel: (646) 357-1100
smartin@hausfeld.com

*Attorneys for Defendant Core-Mark
Midcontinent, Inc.*


_____
Breon S. Peace
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
One Liberty Plaza
New York, New York  10006
Tel: (212) 225-2059
bpeace@cgsh.com

*Attorneys for Defendants McLane/Eastern,
Inc. and McLane/Midwest, Inc.*


_____
Marvin J. Brauth
WILENTZ, GOLDMAN & SPITZER
90 Woodbridge Center Drive, Suite 900
Woodbridge, New Jersey  07095
Tel: (732) 855-6084
mbrauth@wilentz.com

*Attorneys for Plainfield Tobacco and
Candy Co., Inc.*


_____
Robert J. Koshgarian
O'CONNELL & ARONOWITZ, P.C.
54 State Street
Albany, New York  12207
Tel: (518) 462-5601
bkoshgarian@oalaw.com

*Attorneys for Defendant Consumer Product
Distributors, Inc.*


3

Randall M. Fox
KIRBY McINERNEY LLP
825 Third Avenue, 16th Floor
New York, New York 10022
Tel: (212) 371-6600
rfox@kmllp.com

*Attorneys for Plaintiffs*


Scott A. Martin
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, New York 10004
Tel: (646) 357-1100
smartin@hausfeld.com

*Attorneys for Defendant Core-Mark
Midcontinent, Inc.*


Marvin J. Brauth
WILENTZ, GOLDMAN & SPITZER
90 Woodbridge Center Drive, Suite 900
Woodbridge, New Jersey 07095
Tel: (732) 855-6084
mbrauth@wilentz.com

*Attorneys for Plainfield Tobacco and
Candy Co., Inc.*

Andrew M. Lankler
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, New York 10112
Tel: (212) 408-2516
andrew.lankler@bakerbotts.com

*Attorneys for Defendant Harold Levinson
Associates, LLC*


Breon S. Peace
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Tel: (212) 225-2059
bpeace@cgsh.com

*Attorneys for Defendants McLane/Eastern,
Inc. and McLane/Midwest, Inc.*


Robert J. Koshgarian
O'CONNELL & ARONOWITZ, P.C.
54 State Street
Albany, New York 12207
Tel: (518) 462-5601
bkoshgarian@oalaw.com

*Attorneys for Defendant Consumer Product
Distributors, Inc.*

3

Exhibit A p. 46

FILED: KINGS COUNTY CLERK 02/26/2018 01:05 PM
INDEX NO. 502413/2018

NYSCEF DOC. NO. 18    Case 1:18-cv-01432-KAM-VMS    Document 1-1    Filed 03/08/18    Page 48 of 50 PageID #: 58    RECEIVED NYSCEF: 02/26/2018

Randall M. Fox
KIRBY McINERNEY LLP
825 Third Avenue, 16th Floor
New York, New York 10022
Tel: (212) 371-6600
rfox@kmllp.com

*Attorneys for Plaintiffs*

Andrew M. Lankler
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, New York 10112
Tel: (212) 408-2516
andrew.lankler@bakerbotts.com

*Attorneys for Defendant Harold Levinson Associates, LLC*

Scott A. Martin
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, New York 10004
Tel: (646) 357-1100
smartin@hausfeld.com

*Attorneys for Defendant Core-Mark Midcontinent, Inc.*

Breon S. Peace
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Tel: (212) 225-2059
bpeace@cgsh.com

*Attorneys for Defendants McLane/Eastern, Inc. and McLane/Midwest, Inc.*

Marvin J. Brauth
WILENTZ, GOLDMAN & SPITZER
90 Woodbridge Center Drive, Suite 900
Woodbridge, New Jersey 07095
Tel: (732) 855-6084
mbrauth@wilentz.com

*Attorneys for Plainfield Tobacco and Candy Co., Inc.*

Robert J. Koshgarian
O'CONNELL & ARONOWITZ, P.C.
54 State Street
Albany, New York 12207
Tel: (518) 462-5601
bkoshgarian@oalaw.com

*Attorneys for Defendant Consumer Product Distributors, Inc.*

3

Exhibit A p. 47

Randall M. Fox
KIRBY McINERNEY LLP
825 Third Avenue, 16th Floor
New York, New York 10022
Tel: (212) 371-6600
rfox@kmllp.com

*Attorneys for Plaintiffs*

Andrew M. Lankler
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, New York 10112
Tel: (212) 408-2516
andrew.lankler@bakerbotts.com

*Attorneys for Defendant Harold Levinson
Associates, LLC*

Scott A. Martin
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, New York 10004
Tel: (646) 357-1100
smartin@hausfeld.com

*Attorneys for Defendant Core-Mark
Midcontinent, Inc.*

Breon S. Peace
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Tel: (212) 225-2059
bpeace@cgsh.com

*Attorneys for Defendants McLane/Eastern, Inc.
and McLane/Midwest, Inc.*

Marvin J. Brauth
WILENTZ, GOLDMAN & SPITZER
90 Woodbridge Center Drive, Suite 900
Woodbridge, New Jersey 07095
Tel: (732) 855-6084
mbrauth@wilentz.com

*Attorneys for Plainfield Tobacco and
Candy Co., Inc.*

Robert J. Koshgarian
O'CONNELL & ARONOWITZ, P.C.
54 State Street
Albany, New York 12207
Tel: (518) 462-5601
bkoshgarian@oalaw.com

*Attorneys for Defendant Consumer Product
Distributors, Inc.*

3

FILED: KINGS COUNTY CLERK 02/26/2018 01:05 PM INDEX NO. 502413/2018

NYSCEF DOC. NO. 1 Case 1:18-cv-01432-KAM-VMS Document 1-1 Filed 03/08/18 Page 50 of 50 PageID #: 60 RECEIVED NYSCEF: 02/26/2018

Randall M. Fox
KIRBY McINERNEY LLP
825 Third Avenue, 16th Floor
New York, New York 10022
Tel: (212) 371-6600
rfox@kmllp.com

*Attorneys for Plaintiffs*

Scott A. Martin
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, New York 10004
Tel: (646) 357-1100
smartin@hausfeld.com

*Attorneys for Defendant Core-Mark
Midcontinent, Inc.*

Marvin J. Brauth
WILENTZ, GOLDMAN & SPITZER
90 Woodbridge Center Drive, Suite 900
Woodbridge, New Jersey 07095
Tel: (732) 855-6084
mbrauth@wilentz.com

*Attorneys for Plainfield Tobacco and
Candy Co., Inc.*

Andrew M. Lankler
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, New York 10112
Tel: (212) 408-2516
andrew.lankler@bakerbotts.com

*Attorneys for Defendant Harold Levinson
Associates, LLC*

Breon S. Peace
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Tel: (212) 225-2059
bpeace@cgsh.com

*Attorneys for Defendants McLane/Eastern,
Inc. and McLane/Midwest, Inc.*

Robert J. Koshgarian
O'CONNELL & ARONOWITZ, P.C.
54 State Street
Albany, New York 12207
Tel: (518) 462-5601
bkoshgarian@oalaw.com

*Attorneys for Defendant Consumer Product
Distributors, Inc.*

3