UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

---

AMSTERDAM TOBACCO CO., INC.,
DONOHUE CANDY AND TOBACCO CO., INC.,
KINGSTON CANDY & TOBACCO CO., INC.,
MOUNTAIN CANDY & CIGAR CO., INC., and
SUNRISE CANDY & TOBACCO CORP.,

                            Plaintiffs,

  -against-

HAROLD LEVINSON ASSOCIATES, LLC,
CORE-MARK MIDCONTINENT, INC.,
MCLANE/EASTERN, INC.,
MCLANE/MIDWEST, INC., PLAINFIELD
TOBACCO AND CANDY CO., INC. D/B/A
RESNICK DISTRIBUTORS, and CONSUMER
PRODUCT DISTRIBUTORS, INC. D/B/A J.
POLEP DISTRIBUTION SERVICES,

                            Defendants.

**Case No.: 1:18-cv-01432-KAM-VMS**

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
CORE-MARK MIDCONTINENT, INC.'S MOTION TO DISMISS
<u>PLAINTIFFS' AMENDED COMPLAINT</u>**

Scott Martin
Steven Nathan
HAUSFELD LLP
33 Whitehall Street
New York, NY 10004
(646) 357-1100

## **TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ...................................................................................................... ii

**PRELIMINARY STATEMENT** ................................................................................................ 1

**FACTUAL BACKGROUND** ..................................................................................................... 3

**ARGUMENT** ................................................................................................................................ 4

    I.    PLAINTIFFS' PLEADING OBLIGATION ON A MOTION TO DISMISS ..................... 4

    II.    PLAINTIFFS' ALLEGATIONS DO NOT CONSTITUTE CONDUCT PROSCRIBED BY THE CMSA ....................................................................................................................... 4

        A.    Plaintiffs Have Failed To Allege Facts Showing That Core-Mark Made Any Cigarette Sales Below "Minimum" Prices, Let Alone Below Core-Mark's Costs .................................. 5

        B.    Plaintiffs Have Failed To Allege Facts Showing That Core-Mark's Prices Were Not Meeting Competition From Other Distributors ........................................................................ 6

**CONCLUSION** .............................................................................................................................. 8

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                                        **Page(s)**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................................. 6

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................................. 6

*Bubble Genius LLC v. Smith*,
   239 F.Supp.3d 586, 604 (E.D.N.Y. 2017) ........................................................................... 8

*Foman v. Davis*,
   371 U.S. 178 (1962) at 182 ................................................................................................. 8

*Williams v. Citigroup*,
   659 F.3d 208 (2d Cir. 2011) ................................................................................................ 8

**Statutes**

N.Y. Tax Law § 483 ..................................................................................................................... 3

N.Y. Tax Law § 484 ............................................................................................................. 3, 4, 5

N.Y. Tax Law § 485(a)(2)(b) .................................................................................................... 5-6

N.Y. Tax Law § 485(b) ................................................................................................................ 2

N.Y. Tax Law § 486(b) ............................................................................................................ 2, 6

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................................................ 1, 4

Defendant Core-Mark Midcontinent, Inc. ("Core-Mark") respectfully submits this memorandum of law in support of its motion to dismiss, in its entirety and with prejudice, the Amended Complaint against Core-Mark by plaintiffs Amsterdam Tobacco Co., Inc. ("Amsterdam"), Donohue Candy and Tobacco Co., Inc. ("Donohue"), and Mountain Candy & Cigar Co., Inc. ("Mountain"), collectively referred to herein as "Plaintiffs," for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]

## PRELIMINARY STATEMENT

Plaintiffs contend that they did not make cigarette sales to certain retail customers because Core-Mark (and other distributors) offered business incentives that would result in unlawfully low prices of cigarettes if applied as discounts to those sale prices. Plaintiffs' claims are unsupported by the statute under which they are brought (the New York Cigarette Marketing Standards Act, N.Y. Tax Law Art. 20-A, § 483 *et seq.*, or the "CMSA"), by the conclusory allegations upon which they rely, and by common sense. The Court specifically afforded Plaintiffs the opportunity to present their "best case" in this amended pleading, and they have failed to state a claim as a matter of law for several independent reasons. Accordingly, the Amended Complaint should be dismissed with prejudice.

As a threshold matter, Plaintiffs have failed to allege facts that, if proven, would demonstrate that Core-Mark has made any cigarette sales below so-called "minimum" CMSA

---

[1] The caption of Plaintiffs' Amended Complaint reflects the parties named in the pleading as originally filed in state court in Kings County, New York, which was subsequently removed to this Court and thereafter severed by Plaintiffs into separate pleadings. Of the five plaintiffs named in the Amended Complaint's caption, only Amsterdam, Donohue, and Mountain assert claims as to Core-Mark (concerning certain identified cigarette purchasers, including some conduct extending beyond the applicable three-year statute of limitations) in this action.

prices. Plaintiffs' claims are premised upon allegations that Core-Mark has offered and given customers "rebates" (*see, e.g.*, Am. Compl. ¶ 155), but customer rebates based on sales volume, new customer payments and new store or changeover allowances, and monthly loyalty or promotional allowances are commonplace business practices – and, indeed, rebates are *not* prohibited by the CMSA. Further, as the Complaint concedes (*see, e.g.*, Am. Compl. ¶ 103), Core-Mark sells various other, non-cigarette products to such customers. The CMSA plainly contemplates that full-service distributors such as Core-Mark may provide business concessions to obtain both cigarette and non-cigarette business, *see* N.Y. Tax Law § 485(b), and Plaintiffs' complaint lacks factual allegations to demonstrate that any alleged rebates rendered Core-Mark's non-cigarette sales unprofitable such that the Court should transmogrify these business concessions into discounted prices for cigarette sales.

Moreover, the marketplace for distribution of cigarettes (as well as food, snacks, beverages, health and beauty supplies, and other products distributed by Core-Mark to New York purchasers like those identified in the Amended Complaint) is not restricted to one-on-one competition between Core-Mark and each of the Plaintiffs. In their original Complaint [Dkt. No. 1, at Ex. A] (now broken into multiple pleadings), Plaintiffs alleged that Core-Mark and the other four named defendants "are the largest cigarette wholesalers operating in New York." (Compl. ¶ 4) The CMSA specifically allows for cigarette distributors like Core-Mark, in good faith, to meet offers from those large competitors, as well as the multitude of others, and such pricing is expressly excepted from the statute. *See* N.Y. Tax Law § 486(b). The Amended Complaint lacks a factual predicate to demonstrate that Core-Mark was doing anything other than meeting competition in what is pleaded to be a robustly competitive marketplace, and thus fails to allege conduct within the coverage of the CMSA.

**FACTUAL BACKGROUND**

The market for the sale of cigarettes in New York by wholesalers is a competitive one, and Core-Mark is one of the nation's largest full-line convenience store distributors. (Am. Compl. ¶ 4) Like other wholesale distributors and stamping agents for cigarettes, Core-Mark is licensed by the New York State Department of Taxation and Finance and the New York City Department of Finance. (*See* Am. Compl. ¶ 20) Under New York law, a stamping agent prepays the requisite state and local cigarette taxes and passes those costs onto its customers. A stamp is affixed to each packet of cigarettes to indicate that the applicable taxes have been paid. The sale of cigarettes in New York by a stamping agent, like Core-Mark, is highly regulated and is governed by, *inter alia*, the CMSA.

The New York State Legislature passed the CMSA in 1985. (Am. Compl. ¶ 21) The CMSA identifies the relevant actors in the market for wholesale and retail sale of cigarettes: stamping agents, wholesale dealers, chain stores, and retail dealers. *See* N.Y. Tax Law § 483. It provides for certain minimum pricing for the flow of cigarettes among these entities, including defining "cost of the agent" and "cost of the wholesale dealer." In each case, the statute allows individual agents and dealers (i) to calculate their own costs using a formula that specifies necessary inputs, or (ii) as an alternate method, to utilize a minimum price calculated by the State of New York with a percentage markup over basic cost from manufacturers. Section 484 of the CMSA, in turn, proscribes certain behavior related to buying and selling cigarettes below these statutory minimum-cost definitions, and Section 486 clarifies the CMSA's scope by removing certain behavior from the purview of the unlawful activity defined in Section 484. Specifically, where an agent or wholesale dealer engages in the marketing or sale of cigarettes

below statutory minimum definitions but does so in good faith to meet the price of a competitor, such stamping agent or wholesale dealer is not in violation of the CMSA.

## ARGUMENT

### I. PLAINTIFFS' PLEADING OBLIGATION ON A MOTION TO DISMISS

Under the familiar plausibility standard, in order for a complaint "[t]o survive a motion to dismiss" under Rule 12(b)(6), it must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). That requires that "the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Simply put, a complaint must show "more than a sheer possibility that a defendant has acted unlawfully," *id.*, and provide more than "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (quoting *Twombly*, 550 U.S. at 557). Courts have no obligation to accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 679. Specifically, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*.

### II. PLAINTIFFS' ALLEGATIONS DO NOT CONSTITUTE CONDUCT PROSCRIBED BY THE CMSA

Plaintiffs' Amended Complaint contains a single cause of action, Count I (Am. Compl. ¶¶ 154-56), asserting that Core-Mark has violated the CMSA, specifically Section 484. The gravamen of the claim is that "Core-Mark has offered and given customers rebates on cigarettes that drove the prices for such cigarettes below the applicable minimum prices" and did so with the intention of "destroying or substantially lessening competition." (*See* Am. Compl. ¶ 155) As

4

discussed below, (i) the "rebates" at issue do not violate the CMSA, and Plaintiffs have failed to allege facts to show that Core-Mark, which Plaintiffs concede sells many products to the customers at issue, sold *cigarettes* at an unlawfully low price; and (ii) even assuming, *arguendo*, that Plaintiffs had alleged as to any particular customer that Core-Mark's cigarette prices were below cost, Plaintiffs also have failed to plead facts to show that such prices were not offered by Core-Mark in good faith to meet competition from the many other distributors in the marketplace – and thus the conduct must be considered outside the scope of the CMSA.

    **A. Plaintiffs Have Failed To Allege Facts Showing That Core-Mark Made Any Cigarette Sales Below "Minimum" Prices, Let Alone Below Core-Mark's Costs**

As an initial matter, the nub of Plaintiffs' sole cause of action – that Core-Mark allegedly provided "rebates" to customers identified in the Amended Complaint – is not conduct prohibited by the CMSA. Distributors do not violate the statute by providing concessions – whether in the form of fixed up-front new customer or changeover allowances, as monthly allowances or incentive payments (as alleged with respect to the majority of customers here), or in amounts based on volume (which here, as to certain customers, are alleged to employ cigarette purchases as a measuring stick).

Rather, in certain circumstances, the CMSA makes it unlawful for "any agent [or] wholesale dealer . . . with intent to injure competitors or destroy or substantially lessen competition . . . to advertise, offer to sell, or sell cigarettes at less than cost of such agent [or] wholesale dealer." N.Y. Tax Law § 484(a)(1). Further, the CMSA is not blind to the business reality that purchasers of cigarettes may also be purchasers of other products from the same distributor: Section 485 provides that "in all advertisements, offers for sale, or sales involving the giving of any gift or concession of any kind whatsoever . . . the wholesale dealer's combined selling price shall not be below . . . the total costs of all articles, products, commodities, gifts and

5

concessions included in such transactions." N.Y. Tax Law § 485(a)(2)(b). Thus, where a full-line distributor provides allowances to a customer to which it sells other products as well as cigarettes, and that full-line distributor competes for such business on the basis either of a bundled price or allowances or incentive payments, such conduct should not be found to violate the CMSA unless (in addition to otherwise falling within the statute's coverage and satisfying intent requirements) the non-cigarette products properly can be viewed as a loss leader for predation as to cigarette sales. That cannot be said of Plaintiffs' pleading.

Plaintiffs acknowledge here, as they must, that Core-Mark "sells both cigarette and non-cigarette product [to] most of its New York customers" (Am. Compl. ¶ 103), but the Amended Complaint provides only conclusory assertions – bare of any factual allegation as to Core-Mark's volume, pricing and cost structure, or even any information as to same – concerning the array of non-cigarette products sold to such customers by Core-Mark. *See id.* (Plaintiffs assert, without factual predicate, that profit margins on non-cigarette products "would not justify rebates in the amounts that Core-Mark agreed to pay"). In short, Plaintiffs have failed to plead facts to demonstrate that Core-Mark's *cigarette pricing* violated the CMSA, even before consideration of its right to meet competition.

**B. Plaintiffs Have Failed To Allege Facts Showing That Core-Mark's Prices Were Not Meeting Competition From Other Distributors**

Plaintiffs' own pleadings (which identify four other major national cigarette distributors, as well as additional, smaller ones) make clear that this is a competitive marketplace. And Section 486 of the CMSA *expressly excludes* from its coverage sales of cigarettes by a stamping agent or wholesaler dealer, such as Core-Mark, that are "at a price made in good faith to meet the price of a competitor who is rendering the same type of services and is selling the same article at cost to him." N.Y. Tax Law § 486(b). Accordingly, in order to state a claim against Core-Mark

6

under the CMSA, Plaintiffs must either plead facts sufficient to allege that Core-Mark is beating a competitive offer on cigarette pricing, or that Core-Mark is not meeting a competitive offer in good faith. Plaintiffs here have done neither.

Plaintiffs have previously been put on notice of this fatal omission, which Core-Mark pointed out in its pre-motion conference letter directed to the original Complaint. [Dkt. No. 26, at p. 3] In Paragraph 55 of their Amended Complaint, Plaintiffs now add the following allegation: "Core-Mark's sales manager admitted that he knew that competitors' rebates were not legal. When he was asked if what competitors were doing with cigarette pricing was 'legit,' he responded 'no.'" (Am. Compl. ¶ 55) Plaintiffs use this allegation as purported support for the assertion as to individual customers that

> [a]t the time of each of Core-Mark's transactions with [customer], Core-Mark did not make good faith efforts to determine whether any competitors were charging [customer] legal prices below the statutory minimum for the same goods, nor did it make good faith efforts to meet, but not beat, such prices. To the contrary, Core-Mark recognized that other companies' prices were not "legit."

(*See* Am. Compl. ¶¶ 68, 78, 88, 98; *see also* Am. Compl. ¶¶ 111, 122, 132, 140) Plaintiffs' conclusory assertion as to Core-Mark's good faith in meeting competition – resting upon an *inscrutable* purported statement (whether certain pricing was "legit," whatever that means) by an *unnamed* Core-Mark employee, at an *unspecified* time, with respect to *unidentified* competitors *and* customers (let alone those offers or transactions at issue) – plainly lacks the necessary factual predicate to advance their claims past the "possible" to the "plausible" level required under *Twombly* and *Iqbal*, by bringing them within the coverage of the CMSA.

Simply put, there is no factual basis on which to require Core-Mark to have *presumed* that its competitors were selling below their own costs, and for Core-Mark to have *refrained*

7

*from competing* in the marketplace to its business detriment. For this reason as well, Plaintiffs' claims should be dismissed, with prejudice.[2]

## CONCLUSION

For the foregoing reasons, Plaintiffs' Complaint against Core-Mark should be dismissed in its entirety with prejudice.

Dated:   New York, New York
         July 23, 2018

Respectfully submitted,

/s/
Scott Martin
Steven Nathan
HAUSFELD LLP
33 Whitehall Street
New York, NY 10004
smartin@hausfeld.com
snathan@hausfeld.com
Telephone: (646) 357-1100
Fax: (212) 202-4322

*Attorneys for Defendant Core-Mark Midcontinent, Inc.*

---

[2] *See Bubble Genius LLC v. Smith*, 239 F.Supp.3d 586, 604 (E.D.N.Y. 2017) ("the 'futility of amendment' is a valid basis for denying leave to amend" quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *Williams v. Citigroup*, 659 F.3d 208, 214 (2d Cir. 2011) ("[L]eave to amend need not be granted where the proposed amendment would be futile.").