UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------X

AMSTERDAM TOBACCO CO, INC.,
DONOHUE CANDY AND TOBACCO CO.,
INC., and MOUNTAIN CANDY & CIGAR
CO., INC.,                                    **MEMORANDUM & ORDER**

      *Plaintiffs*,                           18-CV-1432(KAM)(VMS)

        -against-

CORE-MARK MIDCONTINENT, INC.

      *Defendant*.

---------------------------------X

**MATSUMOTO, United States District Judge:**

      Plaintiffs Amsterdam Tobacco Co., Inc. ("Amsterdam"),

Donohue Candy and Tobacco Co., Inc. ("Donohue"), and Mountain

Candy & Cigar Co., Inc. ("Mountain Candy" and collectively with

Amsterdam and Donohue, "plaintiffs"), along with Kingston Candy

& Tobacco Co., Inc., and Sunrise Candy & Tobacco Corp,

(collectively with plaintiffs, the "original plaintiffs"),

licensed cigarette distributors based in New York, brought this

action against Harold Levinson Associates, LLC,  ("HLA"), McLane

Eastern, Inc., McLane Midwest, Inc., (together with McLane

Eastern, "McLane"), Plainfield Tobacco and Candy Co., Inc.,

doing business as Resnick Distributors ("Resnick"), Consumer

Product Distributors, Inc., doing business as J. Polep

Distribution Services ("Polep"), and defendant Core-Mark

Midcontinent, Inc. ("Core-Mark" or "defendant") in Kings County

Supreme Court on February 6, 2018 alleging violations of New

York's tax laws pertaining to the sale of cigarettes. (ECF No. 1, Removal Notice.) McLane removed to this court on March 8, 2018 pursuant to 28 U.S.C. §§ 1332, 1441, and 1446(a). (*See id.*) The parties agreed to sever and remand all claims against HLA, a citizen of New York. (*See* ECF No. 20, Stip.; ECF No. 34, Order dated 5/31/2018.) The parties then agreed to dismiss all claims against McLane and certain claims against each remaining defendant; plaintiffs subsequently filed three amended complaints, one against each remaining defendant, Core-Mark, Resnick, and Polep. (*See* ECF Nos. 36-38, Am. Compls.; ECF No. 39, Notice of Dismissal; ECF No. 40, Stipulation Regarding Severance.) Defendants respectively moved to dismiss the Amended Complaints. (*See* ECF Nos. 41-51.)

The parties, however, soon sought to sever this case into three separate actions, each based on the three amended complaints, and the court ordered the original plaintiffs to open two new cases and file their respective amended complaints in the new cases, along with appropriate notices of dismissal in this case. (Docket Order dated 04/03/2019.) Plaintiffs complied with the court's order and on May 1, 2019, the court dismissed Resnick and Polep, leaving only Amsterdam's, Donohue's, and Mountain Candy's claims against Core-Mark in this action. (*See* ECF No. 36, Am. Compl.) Donohue and former plaintiff Kingston then filed a complaint against Polep in

Docket No. 19-CV-2079, Mountain Candy filed a complaint against Resnick in Docket No. 19-CV-2080, and both defendants have respectively moved to dismiss those complaints.

In the operative Amended Complaint in this action, plaintiffs allege defendant Core-Mark systematically violated New York tax law by selling cigarettes to New York retailers at prices below the statutory minimum set by the New York Cigarette Marketing Standards Act ("CMSA"), N.Y. Tax Law § 483, et seq. (Am. Compl. ¶¶ 1-2.)  Core-Mark now moves this court to dismiss plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") for failure to state a claim.  (*See* ECF No. 53, Mot. to Dismiss; ECF No. 53-1, Def.'s Mem. ("DM"); ECF No. 55, Pls.' Opp. ("Opp."); ECF No. 54, Def.'s Reply ("Reply"); ECF No. 56, Fox Decl.)  For the reasons discussed below, the court DENIES defendant's motion and finds that plaintiffs have sufficiently pleaded a violation of the CMSA by Core-Mark.

**BACKGROUND**

The following facts are drawn exclusively from plaintiff's Amended Complaint.  Plaintiffs are each New York corporations and cigarette wholesale dealers (or "wholesalers"), and during the relevant time period, each was also a licensed stamping agent.  (Am. Compl. ¶ 11-13.)  Defendant is a publicly traded company incorporated in Arkansas.  (*Id.* ¶ 14.)  Like

plaintiffs, Core-Mark is a licensed cigarette wholesaler and stamping agent in New York. (*Id.* ¶ 15.)

New York State regulates the distribution of cigarettes through its tax laws. (*See id.* at 4-10.) The State controls what entities can sell cigarettes, collects taxes on the sale of cigarettes, and sets certain minimum prices under the CMSA. (*Id.* at 5.) The typical distribution scheme for cigarettes begins with manufacturers who make and package cigarettes. (*Id.* ¶ 17.) In New York, as in many other states, stamping agents purchase cigarettes in cartons of several packs from the manufacturers and then purchase tax stamps from the state government. (*Id.*) The stamping agents then affix these tax stamps to the cigarette packages and sell the stamped cigarettes to either wholesalers or retailers. (*Id.*) Wholesalers that are also licensed stamping agents will generally sell to retailers, though some wholesalers are not licensed stamping agents. (*Id.*) These latter, non-stamping wholesalers, are often referred to as "subjobbers," and they typically purchase stamped cigarettes from wholesaler stamping agents before selling the stamped cigarettes to retailers who, in turn, sell cigarettes to consumers. (*Id.*)

Agents, wholesalers, and retailers must all be licensed by New York's Tax Department to sell cigarettes in the state. (*Id.* ¶ 18.) Defendant Core-Mark is licensed as a

stamping agent and wholesaler in New York; it purchases

cigarettes from manufacturers, purchases and affixes tax stamps

to the cigarette packages, and then sells the stamped cigarettes

to retailers or smaller wholesalers.  (*Id.* ¶ 20.)

The CMSA sets a minimum price by formula at which

stamping agents and wholesalers in this distribution scheme may

sell cigarettes.  (*Id.* ¶ 16.)  Plaintiffs allege that Core-Mark

has engaged in a "broad scheme" to drive its cigarette prices

below the statutory minimum by giving rebates to its New York

customers dating back to 2015 and earlier.  (*Id.* ¶ 46.)  Core-

Mark's list prices for cigarettes are almost always at the CMSA

minimum price, and when it occasionally diverges from the

minimum, its list prices exceed the minimum by "pennies."  (*Id.*

¶ 47.)  As a regular part of its business, Core-Mark extended

rebates in various forms to its New York customers, including

per-carton rebates of $1 to $3, and up-front or monthly payments

to its customers.  (*Id.* ¶ 49.)  Core-Mark's sales

representatives used misleading sales codes on customer forms

and invoices labelling per-carton rebates that gave the

impression the amounts were for unrelated products.  (*Id.* ¶ 58.)

Plaintiffs offer four examples where Core-Mark

obtained business, former customers of plaintiffs in New York,

by offering per-carton rebates.  Sometime in 2012, Amsterdam

noticed it was selling fewer major brand cigarettes to Tri-State

Candy Wholesale, Inc, a Queens, New York subjobber.  (*Id.* ¶ 64.)
Amsterdam charged Tri-State cigarette list prices at exactly the
CMSA minimum price, and these prices were the same as Core-
Mark's list prices.  (*Id.* ¶ 63.)  Amsterdam soon discovered that
Tri-State shifted its business to Core-Mark because it was
offering Tri-State rebates of $1 per carton.  (*Id.* ¶ 65.)  From
2014 to 2017, Amsterdam's sales to Tri-State declined by nearly
$6 million.  (*Id.* ¶ 66.)  No other competitor offered Tri-State
cigarette prices that were equal to or lower than Core-Mark's
prices.  (*Id.* ¶ 67.)

In September 2016, Mountain Candy similarly
experienced a decrease in cigarette sales to Holbrook
Development Corp., a group of 25 retail stores in New York.
Mountain Candy sold cigarettes to Holbrook at the minimum price
under the CMSA, and Core-Mark's list prices were the same.  (*Id.*
¶ 71.)  Mountain Candy had made approximately $100,000 in annual
sales to a particular Holbrook store.  (*Id.* ¶ 76.)  But, in
September 2016, Holbrook stopped purchasing from Mountain Candy
altogether.  After a Mountain Candy sales representative visited
the Holbrook store, Mountain Candy learned Holbrook was using
Core-Mark shelf labels, and that Core-Mark was offering a $2
per-carton rebate to Holbrook.  (*Id.* ¶ 73.)  As a result,
Mountain Candy stopped selling to this particular Holbrook
store, and was "shut out" from the rest of the Holbrook

collection of stores. (*Id.* ¶ 76.) Mountain Candy was not aware of any other competitor that offered sales to Holbrook at prices equal to or lower than Core-Mark's prices.

Donohue experienced similar losses with Anchor Beverage Center and ASC Mart. (*Id.* ¶ 80.) Donohue charged Anchor and ASC list prices at exactly the CMSA minimum, matching Core-Mark's list prices. (*Id.* ¶ 81.) Sometime in July 2016, however, Anchor and ASC stopped purchasing altogether from Donohue. (*Id.* ¶ 82.) When Donohue's owner visited Anchor, he learned that Anchor and ASC, which have common corporate ownership, switched their business to Core-Mark because it was offering rebates of at least $1 per-carton. (*Id.* ¶ 83.) No other competitor offered Anchor and ASC cigarette prices equal to or lower than Core-Mark's prices. (*Id.* ¶ 88.)

As a final example, Mountain Candy points to Priya and Mohit Enterprises ("Priya") to which it was the primary cigarette supplier prior to August 2016, making more than $260,000 in annual sales. (*Id.* ¶ 90.) Mountain Candy charged Priya at the CMSA minimum, as did Core-Mark. (*Id.* ¶ 91.) Priya, however, stopped ordering from Mountain Candy in August 2016, prompting Mountain Candy's sales representative to inquire with Priya. (*Id.* ¶ 92.) Mountain Candy learned that Priya switched its business to Core-Mark because it was offering $1 per-carton rebates. (*Id.* ¶ 93.) As a result, Mountain Candy

stopped making any sales to Priya.  At the time, no other competitor offered Priya prices equal to or lower than Core-Mark.  (*Id.* ¶ 97.)

In addition to these specific examples, plaintiffs allege that a senior Core-Mark sales manager apparently acknowledged it was giving a certain New York customer up to $3 per-carton rebates, which rebate varied depending on the customer's purchase volume.  (*Id.* ¶ 52.)  The sales manager indicated the rebates vary "with each particular customer" and the amount of business expected.  According to the sales manager, these rebates are recorded as monthly statement "credits" or as "returns," which are then disbursed to the customer by Core-Mark through a check.  (*Id.* ¶ 53.)  The sales manager instructed retailers receiving these credits to lie to auditors if asked about the cigarette rebates and say the credits were for returned merchandise.  (*Id.* ¶ 54.)  Though the sales manager was apparently aware that Core-Mark's competitors also issued rebates, he did not believe these rebates were "legit."  (*Id.* ¶ 55.)

In addition to per-carton rebates, plaintiffs similarly allege Core-Mark made a number of up-front payments or monthly allowances to their former customers, resulting in plaintiffs losing all or a significant portion of their business with these customers.  In February 2016, for example, Mountain

Candy's largest customer, Smokers Choice, stopped purchasing from Mountain Candy altogether. Smokers Choice switched their business to Core-Mark "in exchange for an upfront payment of $750,000," apparently tied to the "cigarette sales it expected to make to Smokers Choice." (*Id.* ¶ 107-08.) Mountain Candy had been charging Smokers Choice list prices at exactly the CMSA minimum, as did Core-Mark. (*Id.* ¶ 106.) Though cigarettes comprised approximately 66% of Mountain Candy's sales to Smokers Choice, they accounted for approximately 98% of Mountain Candy's profits from Smokers Choice. (*Id.* ¶ 105.) Prior to February 2016, Mountain Candy's annual sales to Smokers Choice were in the tens of millions of dollars. (*Id.* ¶ 109.)

Mountain Candy makes similar allegations that it lost business to a number of stores as a result of monthly payments made by Core-Mark to Mountain Candy's former customers. In each case, Mountain Candy's prices and Core-Mark's cigarette prices were at the CMSA minimum. Mountain Candy typically sold these customers a mix of cigarettes and non-cigarette goods, with the former making up most of the profits. To each of these customers, Core-Mark made monthly payments of $500 to $800, tied to the volume of cigarette sales each customer made. Though several of these retailers indicated they would bring their business back to Mountain Candy if it offered similar payments, Mountain Candy refused, and lost business as a result.

**JURISDICTION**

The court has original jurisdiction over this dispute, as plaintiffs invoke the court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. This case was properly removed pursuant to 28 U.S.C. § 1441 once the claims against HLA, the non-diverse defendant, were severed and remanded. Plaintiffs are all New York-based corporations and defendant is an Arkansas corporation that maintains a business location in New York. (Am. Compl. ¶¶ 11-14.) Defendant has apparently consented to venue in this District. (*Id.* ¶ 10.) The amount in dispute, as alleged in the Amended Complaint, well exceeds the jurisdictional threshold of $75,000.

**LEGAL STANDARD**

Defendant moves under Rule 12(b)(6) to dismiss the Amended Complaint for failure to state a claim. To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead facts that, if accepted as true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is facially plausible when the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint need not contain detailed factual allegations, but must contain more than mere "labels and

conclusions" or a "formulaic recitation of the elements of a cause of action" or "naked assertions" devoid of "further factual enhancement." *Id*. For motions under Rule 12(b)(6), the court assumes the truth of all facts asserted in the operative complaint and draws all reasonable inferences from those facts in favor of the non-moving plaintiff. *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 154 (2d Cir. 2006).

**DISCUSSION**

**I.    Cigarette Marketing Standards Act**

New York's legislature enacted the CMSA in response to a perceived need to regulate and stabilize cigarette sale prices due to predatory pricing by out-of-state dealers with similar minimum price statutes. *Lorillard Tobacco Co. v. Roth*, 99 N.Y.2d 316, 318 (N.Y. 2003). The CMSA prohibits the sale of cigarettes below cost when the seller intends thereby to harm competition or evade taxes. *City of New York v. Golden Feather Smoke Shop, Inc.*, No. 08-CV-3966, 2009 WL 705815, at *13 (E.D.N.Y. Mar. 16, 2009) (citing *Lorillard Tobacco*, 99 N.Y.2d at 316). Specifically, an agent, wholesale dealer, or retail dealer violates the CMSA when it advertises, offers to sell, or sells cigarettes at less than its cost, with intent to injure competitors, to destroy or substantially lessen competition, or to avoid the collection or payment of taxes. N.Y. Tax Law § 484(a)(1).

Generally, the statute determines the minimum price for a carton of cigarettes by adding to the manufacturer's price (i.e. the cost to a distributor) the cost of a tax stamp and a mark-up amount accounting for the wholesaler's or retailer's costs of doing business. *See* N.Y. Tax Law § 483(a)-(b). Under the statute, "cost" consists of the "basic cost of cigarettes" plus the agent or dealer's "cost of doing business," which is also set by statutory formula. *See id.* The "basic cost of cigarettes" is in turn defined as "the invoice cost of cigarettes to the agent who purchases from the manufacturer . . . less all trade discounts, except discounts for cash, to which shall be added the full face value of any stamps which may be required by law." *Id.* § 483(a)(1); *see also Golden Feather Smoke Shop*, 2009 WL 705815, at *13.

The CMSA includes an exception to sales below the statutory minimum that is applicable here. Section 486 excludes sales "at a price made in good faith to meet the price of a competitor who is rendering the same type of services and is selling the same article at cost to him." N.Y. Tax Law § 486(b)(1). In the absence of proof of a specific competitor price, the CMSA deems as the competitor's price the cost of the wholesaler as determined by § 483, *i.e.* the statutory minimum. *Id.* § 486(b)(2).

The CMSA also contemplates distributors will sell cigarettes together with other products, and that distributors, in common business practice, may offer rebates, concessions, or even gifts to customers. *See id.* § 485(a)(2)(b); *see also* N.Y. Comp. Codes R. & Regs. tit. 20, § 84.1(b)(1) ("Generally, a concession is the granting or yielding to a request or demand at or before the time of sale, where as a rebate is a return of something of value at a later time."). In any sale including other products or involving rebates, gifts, or concessions, the wholesale dealer's combined selling price must not be below "the total costs of all articles, products, commodities, gifts and concessions included in such transactions." N.Y. Tax Law § 485(a)(2)(b). Though New York's regulations that enforce the CMSA expressly state that rebates are not inherently unlawful, they also caution against strictly construing the definitions of both rebates and concessions "so as to narrow or circumvent the cigarette marketing standards." N.Y. Comp. Codes R. & Regs. tit. 20, § 84.1(b).

## II.  Pleading Exceptions

Defendant argues that the Amended Complaint fails to demonstrate that Core-Mark beat a competitor's price or that its conduct did not fall within the CMSA's "meeting competition in good faith" exception. (DM 2, 6-8.) In support of this argument, defendant cites the substantial competition extant in

New York's cigarette distribution market, arguing that plaintiffs ignored the existence of other competitors.

Plaintiffs respond that defendant's argument—that plaintiffs must plead facts negating an exception to the CMSA—is not proper at the pleadings stage as it constitutes an affirmative defense. (Opp. 12.) In support of this argument, plaintiffs argue it is the defendant who "bears the burden of proving the prices of competitors that it supposedly met." (*Id.* at 13.) Plaintiffs also cite to extra-Circuit authority that demonstrates "meeting competition" exceptions to other minimum pricing statutes are treated as affirmative defenses, placing the burden on the party invoking the exception. (*Id.*) Further, plaintiffs argue the allegations in the Amended Complaint establish that Core-Mark was "beating competition," not merely meeting competition, because plaintiffs were offering cigarettes at exactly the CMSA minimum, and Core-Mark beat those prices. (*Id.* at 12 (citing Am. Compl. ¶ 71).) Finally, plaintiffs argue that Core-Mark's argument that the cigarette market is highly competitive would require the court to make a factual finding, which would be improper at the pleadings stage. (*Id.* at 14.)

On reply, defendant cites to *Lightbody v. Russell*, 293 N.Y. 492 (N.Y. 1944), to argue that a plaintiff must plead that an exception does not apply "where a statutory cause of action contains an 'exception' enacted at the same time." (Reply 6

(citing *Lightbody*, 293 N.Y. at 494-95).)  Putting aside the rule

that a court need not consider new arguments raised for the

first time in a reply brief, *see Ruggiero v. Warner-Lambert Co.*,

424 F.3d 249, 252 (2d Cir. 2005), the New York Court of Appeals

holding in *Lightbody* does not go as far as defendant argues.

There, the plaintiff's claim for relief hinged on alleged

purchases being made "for use or consumption other than in the

course of trade or business."  *Lightbody*, 293 N.Y. at 494

(citing 50 U.S.C. Appendix § 925).  The *Lightbody* court

characterized this requirement as an exception and both "as the

foundation of" and a "statutory condition to the cause of

action."  *Id.* at 495.  It is clear to see why, as the sentence

and section creating the cause of action expressly includes the

requirement that the use or consumption be for "other than in

the course of trade or business."  That is, this "other than"

clause was an element of the cause of action.

Section 486 of the CMSA is titled "Exceptions," and

expressly excepts from enforcement under the CMSA good faith

efforts to meet the price of a competitor.  N.Y. Tax Law § 486.

Section 484, however, which gives rise to plaintiffs' claim for

relief and sets forth the elements of a violation of the CMSA,

does not reference sales made "other than" in good faith.  *See*

*id.* § 484.  That is, § 484(a)(1) only requires: (1) an agent,

wholesale dealer, or retail dealer; (2) advertise, offer to

sell, or sell cigarettes at less than the cost of such agent, wholesale dealer, or retail dealer; (3) with intent to injure competitors, destroy or substantially lessen competition, or avoid the collection or paying of taxes. *Id.* Plaintiffs' cause of action, and that at issue in *Lightbody*, and their respective statutory structures, are clearly distinguishable and *Lightbody* is thus inapplicable to plaintiffs' cause of action. Defendant's other cited case for this proposition, *Rowell v. Janvrin*, 151 N.Y. 60 (N.Y. 1896), only further undercuts its argument. There, the Court of Appeals clearly distinguished between an exception "embodied in and forming a part of the enacting clause itself" from a *proviso* which follows the enacting clause, "modifies or changes its scope and application or take[s] a particular case out of it." *Rowell*, 151 N.Y. at 67-69. The court held the latter need not be alleged in the negative in a pleading. *Id.* at 69.

Based on this authority and federal pleading requirements under Federal Rule of Civil Procedure 8, the court finds that plaintiffs' Amended Complaint need not have alleged the inapplicability of any exceptions available to defendant under the CMSA. The good faith meeting competition exception is codified in a different section, whereas the "other than" language in *Lightbody* was included in the same sentence giving rise to the cause of action. Moreover, the CMSA places the

burden of proof of a competitor's price on the party invoking the exception, by defaulting to the statutory minimum in the absence of proof of a lower competitor's price.  N.Y. Tax Law § 486(b)(2).  This supports the conclusion that the exception is an affirmative defense, that need not be alleged by plaintiff at the pleadings stage, but at summary judgement or trial.  Thus, defendant cannot argue that plaintiffs did not state a claim for relief because they did not sufficiently allege bad faith or that Core-Mark was *not* meeting competition.  Core-Mark's reliance on the substantial competition in the cigarette distribution market amounts to a factual dispute, not properly resolved at this stage of the litigation.

In any event, the court would find that plaintiffs' allegations that Core-Mark beat competition by lowering its prices below the statutory minimum are sufficient to state a claim.  So too are plaintiffs' allegations that Core-Mark's sales manager was aware that certain of Core-Mark's competitors' rebates were not "legit."  Thus, the court finds plaintiffs were not required to plead facts showing Core-Mark did not offer prices in good faith to meet competition.  The court next considers whether the allegations are sufficient to state a violation of the CMSA.

### III.	Cigarette Sales Below CMSA Minimum

Defendant next argues that plaintiffs have failed to allege any cigarette sales by Core-Mark at prices below the CMSA's statutory minimum.  (DM 1-2, 5-6.)  Defendant argues plaintiffs' allegations that Core-Mark offered and gave rebates to customers is a common business practice and is not prohibited by the CMSA.  (*Id.* at 2.)  Moreover, defendant argues, plaintiffs' allegations that Core-Mark offered and gave impermissible concessions in the form of upfront payments and monthly checks to certain customers lack facts to demonstrate Core-Mark's non-cigarette sales were rendered unprofitable such that the concessions resulted in discounted cigarette sales. (*Id.* at 5-6.)  Defendant points out, as conceded in the Amended Complaint, that it is a "full-line distributer" that makes both cigarette and non-cigarette sales, the latter of which includes food, snacks, beverages, and health and beauty supplies.  (*Id.* at 2, 6.)  Concessions through bundled prices or allowances for these non-cigarette sales, defendant argues, can properly be viewed as a loss-leader, and is similarly contemplated by the CMSA.  (*Id.* at 6.)

Plaintiffs respond that defendant's argument is unrelated to many of the alleged violations in the Amended Complaint, as only some of the alleged violations involved allowances.  (Opp. 10-11.)  That is, plaintiffs argue the

Amended Complaint clearly alleges Core-Mark took business from plaintiffs by giving customers secret rebates, not just allowances. (*Id.* at 11 (citing Am. Compl. ¶¶ 56-99).) Further, plaintiffs argue, the allegations pertaining to allowances directly tied those allowances to cigarette prices and sales, and to a resulting reduction of cigarette prices which were alleged to be at the CMSA minimum already. (*Id.*)

First, defendant focuses on plaintiffs' allegations of concessions or allowances, and argues these do not allege a below-minimum sale. This appears to ignore, as plaintiffs point out, the several alleged violations involving *rebates* of $1-2 per carton. (*See, e.g.*, Am. Compl. ¶¶ 61-89.) Defendant argues rebates are not illegal under the CMSA. This is, of course, accurate *if* the rebate "does not directly or indirectly serve to reduce the price below that at which cigarettes can be lawfully sold or purchased in [New York]." N.Y. Comp. Codes R. & Regs. tit. 20, § 84.1(b)(2). Indeed, rebates are not inherently illegal under the CMSA, but they are suspect, as the giving of rebates permits a presumption of intent to harm competition. N.Y. Tax Law § 484(a)(6). What matters, then, is not that defendant gave rebates, but the effect of those rebates, "directly or indirectly" on the price at which Core-Mark sold cigarettes.

Defendant represents that the Amended Complaint does not allege any sales below the CMSA minimum, but even a cursory review finds otherwise.  In just one example, plaintiffs allege Amsterdam and defendant Core-Mark both charged a particular customer, Tri-State, list prices exactly at the CMSA minimum, (*id.* ¶ 63), and that plaintiffs then "discovered that Tri-State was shifting its business to Core-Mark because Core-Mark was giving it rebates of $1 per carton," (*id.* ¶ 64).  Coupling these two alleged facts, taken as true, offers sufficient support to plaintiffs' claim that Core-Mark was selling cigarettes at less than Core-Mark's cost.  Plaintiffs plead three other examples of such per-carton rebate arrangements by Core-Mark, and explain that "[w]ith its rebates, Core-Mark sold cigarette cartons to [customer] for $1 below the statutory minimum price."  (*Id.* ¶ 94.)  These allegations thus satisfy § 484's advertise, offer, or sell for less than costs element.

Plaintiffs also allege Core-Mark violated the CMSA by offering upfront payments or monthly allowances.  These allegations require an additional logical step before the court can draw the reasonable inference that Core-Mark is liable under the CMSA, but plaintiffs' allegations support this step.  The alleged upfront payments or monthly allowances were to Mountain Candy's former customers who typically purchased both cigarettes and non-cigarettes.  Defendant points out, and the court agrees,

that the CMSA contemplates and permits such typical business practices though it requires the wholesale dealer's combined selling price "not be below the cost of the . . . wholesale dealer . . . of the total costs of all articles, products, commodities, gifts and concessions." N.Y. Tax Law § 485(b).

Thus, plaintiffs must allege that defendant's selling prices were below its total costs of all articles involved in the sale, including the gift or concession. The Amended Complaint alleges as much, and plaintiffs lay the factual groundwork by alleging their own respective cost structures to each customer allegedly lost to Core-Mark. Plaintiffs' respective margins were driven, unsurprisingly, by its cigarette sales, and its margins for non-cigarette items made up an insubstantial portion of the total. Based on plaintiffs' allegations, it is reasonable for the court to infer that Core-Mark, a large competitor in a uniformly regulated industry, would make similar proportional sales to and profits from the same customers. Plaintiffs articulate this logical conclusion in their opposition: "[b]ecause the list prices for the cigarettes were already at the CMSA minimum, and the profit margins on the non-cigarette items were nearly non-existent, the [upfront] payment pushed the prices to Smokers Choice below the statutory minimum level." (Opp. 8 (citing Am. Compl. ¶ 108).) Whether or not this is true may be borne out in discovery, but

plaintiffs have alleged sufficient facts, taken as true, to allow the court reasonably to infer that Core-Mark violated the CMSA. Defendant's response that its non-cigarette products "properly can be viewed as a loss leader" amounts to a factual dispute, as plaintiffs allege the loss attributed to these non-cigarette products impermissibly reduced the selling price below the total cost to Core-Mark. This factual dispute is not properly considered in a motion to dismiss.

Finally, and as to § 484's intent requirement, the CMSA provides that evidence of offering or giving a rebate or concession "of any kind or nature whatsoever in connection with the sale of cigarettes . . . shall be *prima facie* evidence" of the CMSA's intent requirement. N.Y. Tax Law § 484(a)(6)(emphasis added). As plaintiffs allege, Core-Mark's rebates and concessions drove down its sale prices below costs, and, thus, plaintiffs have sufficiently pleaded that Core-Mark violated § 484 of the CMSA.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is DENIED. The parties shall proceed to discovery and

are hereby referred to Magistrate Judge Scanlon for all pre-trial matters.

**SO ORDERED.**

Dated:   September 26, 2019
        Brooklyn, New York

_____/s/_____
**Kiyo A. Matsumoto**
United States District Judge